**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Staff Sergeant KEVIN GAY**
**United States Air Force**

**ACM 38525**

**___ M.J. ___**

**12 June 2015**

Sentence adjudged 30 May 2013 by GCM convened at Joint Base McGuire-Dix-Lakehurst, New Jersey. Military Judge: Joshua E. Kastenberg.

Approved Sentence: Bad-conduct discharge, confinement for 5 months and 21 days, forfeiture of all pay and allowances, and reduction to E-3.

Appellate Counsel for the Appellant: Captain Lauren A. Shure.

Appellate Counsel for the United States: Lieutenant Colonel John E. Owen; Major Matthew J. Neil; and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, CONTOVEROS
Appellate Military Judges

PUBLISHED OPINION OF THE COURT

WEBER, Judge:

The appellant pled not guilty at a general court-martial to four specifications of larceny, four specifications of wrongful appropriation, one specification of wire fraud, and one specification of identity theft, in violation of Articles 121 and 134, UCMJ, 10 U.S.C. §§ 921, 934.[1] A panel of officer members convicted the appellant of two larceny specifications, two wrongful appropriation specifications, and the wire fraud and

---

[1] The specification alleging wire fraud incorporated 18 U.S.C. § 1343. The specification alleging identity theft incorporated 18 U.S.C. § 1028A(a)(1).

identity theft specifications. The members sentenced the appellant to a bad-conduct discharge, confinement for 6 months, forfeiture of all pay and allowances, and reduction to the grade of E-3. The convening authority reduced the confinement to 5 months and 21 days, but otherwise approved the sentence as adjudged.

The appellant now alleges that the government violated Article 55, UCMJ, 10 U.S.C. § 855, by subjecting him to cruel and unusual punishment during his post-trial confinement. During our review of this issue, we ordered additional briefing on the related issue of whether we could and should grant sentence appropriateness relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c), resulting from the conditions of the appellant's post-trial confinement. Additionally, the appellant requests sentence relief under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), for the government's delay in forwarding the record of trial for appellate review. We grant relief as discussed below.

*Background*

The appellant and Staff Sergeant (SSgt) NH were engaged to be married and lived together. The two kept their finances separate but were each responsible for certain household expenses. Each also bought the other gifts, and the appellant took care of some additional expenses for SSgt NH. SSgt NH had one Visa credit card, plus three store credit cards.

When SSgt NH departed for a one-year remote assignment, she gave her store credit cards to the appellant for safekeeping; however, she did not authorize him to use them or to take out any credit cards in her name. The couple broke up soon after SSgt NH departed. Several months later, SSgt NH learned that a bill collector was trying to contact her to collect a debt of about $8,000 owed on a credit card in her name. She obtained a credit report that revealed she had several other open credit lines with balances in the thousands of dollars. According to SSgt NH, she did not open these accounts or authorize anyone else to do so. In addition, the store credit cards—which had no balance when she departed—now had overdue balances. SSgt NH confronted the appellant over the telephone, and the appellant made several incriminating statements.

Further investigation revealed the appellant opened several credit cards in SSgt NH's name using personal information to which he had access. He then used these credit cards and left overdue balances on them. Much of this misconduct occurred before SSgt NH departed for her remote assignment.

During a series of pretext phone calls about this matter, SSgt NH pressed the appellant for a complete list of credit cards he had taken out in her name. The appellant demurred, stating his household goods were en route to his mother's house due to his pending medical separation, and he could not answer SSgt NH's question until he could review his records contained in the shipment. The Air Force Office of Special

Investigations, in conjunction with local law enforcement, obtained a search warrant for the appellant's mother's residence. The search revealed several documents relating to the appellant's financial misconduct. In addition, the search revealed two government laptop computers. These laptops had previously been reported missing and were the subject of reports of survey that noted a lack of sufficient oversight and safeguards. The appellant had been one of the individuals responsible for providing this oversight and employing such safeguards.

Further facts relevant to the assignments of error are discussed below.

*Conditions of Post-Trial Confinement*

Following announcement of the sentence, the appellant was placed in the Monmouth County Correctional Institution (MCCI) on 30 May 2013. He was assigned to a "pod." While in the pod, the appellant alleged he was confined in proximity to a foreign national for nine days. The appellant raised this issue in his clemency request, and the convening authority granted the appellant's requested relief by disapproving nine days of the adjudged sentence to confinement for this apparent violation of Article 12, UCMJ, 10 U.S.C. § 812.

On the ninth day following the appellant's arrival at MCCI, he was placed in solitary confinement. As part of his clemency request, the appellant submitted a complaint under Article 138, UCMJ, 10 U.S.C. § 938, regarding this issue. Attached to his Article 138, UCMJ, complaint was an affidavit he signed, which stated in relevant part:

> On 7 June 2013, I was moved into solitary confinement, which segregated me from the foreign national in Pod F-1 and all other inmates. Upon entering solitary I was stripped, searched, placed in shackles, put on 23 hour per day lockdown, denied phone calls and visitation and forced to use an open caged shower and bathroom. I was released from solitary on 13 June 2013, after [certain officials from his squadron] came to check on my living arrangements and discovered what had happened. I was immediately removed from solitary per their request to the MCCI staff. I am now presently housed in Pod F-2 and awaiting transfer to a military confinement facility.

The appellant also stated that he heard from MCCI personnel that someone at the base legal office directed the appellant's placement into solitary confinement. However, this assertion was merely contained in his complaint letter rather than the accompanying

affidavit.  Also attached to the Article 138, UCMJ, complaint was an affidavit signed by the appellant's squadron superintendent.  It stated in relevant part:

> I visited SSgt Kevin Gay at the [MCCI] on 13 June 2013, and I was alarmed to find that SSgt Gay was in solitary confinement and brought out in handcuffs and that he had been in that condition since 7 June 2013.  I was accompanied by [two non-commissioned officers responsible for confinement at the base security forces squadron].  Upon learning of SSgt Gay's living conditions, we immediately complained to the MCCI staff.  [An officer from the appellant's squadron] saw to it that SSgt Gay was immediately released from solitary confinement and placed in a Pod alongside American Citizens at approximately 1630 hours on 13 June 2013.
>
> I learned from the staff at MCCI that MCCI has a procedure in place to ensure military members are not placed in confinement alongside foreign nationals or enemy prisoners of war.  However, according to MCCI staff they were verbally instructed by personnel at Joint Base McGuire-Dix-Lakehurst, New Jersey, without explanation, to place SSgt Gay [into] protective custody, which they did without question.

The record does not contain evidence of any action taken in response to this Article 138, UCMJ, complaint.  However, the addendum to the staff judge advocate's recommendation attached a "memorandum for record" from the base legal office's chief of military justice.  That memorandum, which was not reduced to an affidavit or sworn declaration, reads in relevant part as follows:

> On 25 September 2013, I called the [MCCI] and spoke with Officer [CL] of the Intake and Booking office about the practices and procedures related to individuals placed into segregation cells.  Officer [CL] stated that inmates placed into segregation are in their cells for 23 hours a day, but are not restrained by shackles or handcuffs while in the cell.  He stated the only time an inmate is placed into shackles or handcuffs is during periods that the inmate is being moved from a cell to another location within the correctional facility.  He estimated that the longest period an inmate is placed into shackles or handcuffs for movement is when the inmate is moved to the visiting area, which takes approximately five

minutes. He stated that while the member is in the visiting area he is unshackled. He was unaware of how many times [the appellant] was moved to the visiting area from his segregated cell. Officer [CL] stated the standard practice is to strip search inmates as they are placed into segregation, but no further strip searches are conducted solely due to an inmate's segregated status. Officer [CL] confirmed [the appellant] would have been subjected to a strip search when he first entered segregation. Finally, Officer [CL] stated that the shower and bathroom facility in the segregated area is covered with a curtain material and inmates enter clothed and then undress and dress behind the curtain material.

The chief of military justice's memorandum did not dispute the contention that legal office personnel instructed MCCI officials to place the appellant in solitary confinement, and it did not address the reason the appellant was placed in solitary confinement. Based on this memorandum, the staff judge advocate advised against granting relief for the appellant's complaint regarding his solitary confinement. The convening authority followed that advice.

Before this court, the appellant alleges that his placement in solitary confinement, and the associated conditions of his period in solitary confinement, constitute cruel and unusual punishment in violation of the Eighth Amendment[2] and Article 55, UCMJ.

We review de novo allegations of cruel and unusual punishment. *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001).

Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent. *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citing *United States v. Wappler*, 9 C.M.R. 23, 26 (C.M.A. 1953)).

"[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). A violation of the Eighth Amendment is shown by demonstrating: "(1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting

---

[2] U.S. CONST. amend. VIII.

to deliberate indifference to [the appellant's] health and safety; and (3) that [the appellant] has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ." *Id.* (alteration in original) (footnotes omitted) (internal quotation marks omitted).

Before applying these standards, we must first determine what facts are properly before this court, and whether we are required to remand this case for a post-trial factfinding hearing. In *United States v. Fagan*, 59 M.J. 238, 241 (C.A.A.F. 2004), our superior court determined that the framework of *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), governs our determination of whether a post-trial factfinding hearing is necessary to resolve "a post-trial claim that is framed by conflicting affidavits." Therefore, the following principles (originally set forth to deal with post-trial claims of ineffective assistance of counsel) determine when a post-trial factfinding hearing is required:

> First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.

> Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.

> Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.

> Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.

> Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the

appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

Sixth, the Court of Criminal Appeals is required to order a factfinding hearing only when the above-stated circumstances are not met. In such circumstances the court must remand the case to the trial level for a *DuBay* proceeding. During appellate review of the *DuBay* proceeding, the court may exercise its Article 66 factfinding power and decide the legal issue.

*Ginn*, 47 M.J. at 248; *see also United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967).

The *Ginn* framework does not require us to remand this case for a factfinding hearing, for two reasons. First, this case does not involve "a post-trial claim that is framed by conflicting affidavits." The appellant submitted two affidavits to support his claims of cruel and unusual punishment, but in clemency and on appeal, the government has made no effort to provide an affidavit to rebut the appellant's contentions despite ample opportunity to do so. Instead, the government chose to wholly rely on an unsworn memorandum for record.[3] Additionally, the third *Ginn* factor largely applies because for the most part, the chief of military justice's memorandum did not contest the appellant's version of the facts. The memorandum did not dispute that the appellant was placed in solitary confinement, did not contest that base legal office personnel directed his placement in solitary confinement, did not contest that the appellant was placed on 23-hour per day lockdown and denied phone calls and visitation, did not contest that the appellant was handcuffed or shackled to a certain extent, and did not contest that the appellant could have been placed in another pod to avoid his association with a foreign national rather than placed in solitary confinement. The memorandum only addressed discrete aspects of the appellant's claim, such as the extent of the use of handcuffs or shackles and his claim that he was forced to use an open caged shower.

With this factual framework in mind, we find no violation of the Eighth Amendment or Article 55, UCMJ. Both our superior court and federal civilian courts have held that solitary confinement, per se, does not constitute cruel and unusual

---

[3] If the memorandum for record was submitted directly to this court to address this post-trial issue, this court would not normally admit or consider it. *See* A.F. CT. CRIM. APP. R. PRAC. AND PROC. 23(b) (stating that any statement for consideration by the court "on any matter . . . shall be made either as an affidavit or as an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746"). This rule is based in part on *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), which deals with this court's ability to resolve "a post-trial claim that is framed by conflicting affidavits." *United States v. Fagan*, 59 M.J. 238, 241 (C.A.A.F. 2004). As we have elected to consider the substance of the memorandum of record in resolving this issue, we need not decide whether the government may, as a legal matter, counter claims raised in affidavits submitted in clemency with an unsworn memorandum. We simply note that this is not a recommended practice and may lead to a convening authority or this court giving less weight to the assertions raised in the unsworn memorandum.

punishment. *See Avila*, 53 M.J. at 101 (surveying federal cases). Rather, we review the specific conditions of solitary confinement to determine whether the confinement involved deprivation of basic needs or unnecessary infliction of pain. *Id.* at 101–02. The appellant's complaint does not amount to a serious act or omission resulting in a denial of necessities, and he claims no infliction of pain on him. Typically, such serious acts or omissions include matters such as denial of needed medical attention, proper food, or sanitary living conditions. Physical abuse may also qualify under this standard. *Id.*

Even accepting the appellant's Article 138, UCMJ, complaint at face value, we must note that the appellant claims nothing unusual about the conditions of his solitary confinement and does not show he was harmed physically or in any other appreciable way. Instead, the appellant's contentions smack more of "routine conditions associated with punitive or administrative segregation," which do not "rise to the level of a deprivation of life's necessities and violation of the Eighth Amendment." *Id.* at 102. Concerning the use of shackles, we recognize that the use of leg irons may in some circumstances rise to the level of an Article 55, UCMJ, violation, as the article specifically sets limits on the use of irons. *United States v. Wise*, 64 M.J. 468, 470 (C.A.A.F. 2007). However, we see no evidence in the record that the use of shackles was not for the purpose of safe custody, which is all that is required under Article 55, UCMJ.

In short, the appellant has not established that he was subject to cruel or unusual punishment. Solitary confinement per se is not incompatible with the evolving standards of decency that mark the progress of a maturing society, and there is no evidence of the unnecessary and wanton infliction of pain. Under the three-part *Lovett* test, we find the third factor is met because the appellant (or his unit) did raise this to prison officials and he petitioned for relief under Article 138, UCMJ. Regardless of whether the second factor is met (a culpable state of mind on the part of prison officials amounting to deliberate indifference to the appellant's health and safety), the appellant's claim fails under the first factor. No objectively, sufficiently serious act or omission occurred that resulted in the denial of necessities. The appellant is not entitled to relief for his allegation of cruel and unusual punishment.

This does not end our analysis of this issue, however. Under our broad Article 66(c), UCMJ, authority, we retain responsibility in each case we review to determine whether the adjudged and approved sentence is appropriate. Under Article 66(c), UCMJ, our sentence appropriateness authority is to be based on our review of the "entire record," which necessarily includes the appellant's allegation of the conditions of his post-trial confinement. *See United States v. Towns*, 52 M.J. 830, 833 (A.F. Ct. Crim. App. 2000) (noting that matters submitted to the convening authority for clemency purposes are available to this court to aid us in determining the appropriateness of a sentence). While we may not engage in acts of clemency, we hold that we may consider post-trial confinement conditions as part of our overall sentence appropriateness determination, even where those allegations do not rise to the level of an

Eighth Amendment or Article 55, UCMJ, violation. Our superior court has specifically recognized that the courts of criminal appeals have broad discretion to grant or deny relief for unreasonable or unexplained post-trial delay, even where the delay does not rise to the level of a due process violation. *Tardif*, 57 M.J. at 224. It necessarily follows that we maintain similar discretion for post-trial confinement conditions that do not rise to the level of a constitutional or statutory violation. This fits easily within our broad charter to "do justice." *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991).

Our superior court's decision in *Fagan* supports our conclusion. In *Fagan*, the Army Court of Criminal Appeals declined to order a post-trial factfinding hearing and instead decided to "moot the issue" by granting sentence appropriateness relief. *Fagan*, 59 M.J. at 240–41. Our superior court held the court erred in failing to apply the *Ginn* factors before moving directly to grant sentence appropriateness relief. However, that was the extent of the *Fagan* decision. The court did not hold that the service courts are prohibited from granting sentence appropriateness relief rising from complaints of post-trial conditions. Rather, it more narrowly held that our sentence appropriateness authority "does not come into play" until the *Ginn* factors are employed to resolve competing factual claims. *Id.* at 244; *see also United States v. Zarbatany*, 70 M.J. 169, 177 (C.A.A.F. 2011) (indicating that a court of criminal appeals could employ its sentence appropriateness authority in determining whether meaningful relief for pretrial confinement credit was required); *Towns*, 52 M.J. at 833 ("When an appellant claims cruel and unusual punishment, he is claiming he has been treated unfairly. Such a claim is a claim of unjust treatment, not a request for mercy. We therefore hold that Article 66(c), UCMJ, bestows jurisdiction on this Court to consider claims of cruel and unusual post-trial treatment in cases properly referred to us. This jurisdiction is limited to consideration of these claims as part of our determination of sentence appropriateness."); *United States v. Pena*, 61 M.J. 776, 778 (A.F. Ct. Crim. App. 2005) (denying challenge to mandatory release program but holding that the court had authority under Article 66(c), UCMJ, to review the issue).

Under the facts of this particular case, we elect to grant sentence appropriateness relief even though the appellant's treatment does not constitute an Eighth Amendment or Article 55, UCMJ, violation. While we would be within our authority to consider the entirety of the affidavits accompanying the appellant's Article 138, UCMJ, complaint (because the government did not submit a contrary affidavit or declaration), we limit our consideration solely to matters the government's memorandum did not dispute. The following facts inform our decision that the appellant's post-trial treatment has rendered his sentence inappropriately severe:

1. No valid reason has been offered for placing the appellant in solitary confinement. The chief of military justice's memorandum did not indicate the appellant was placed in solitary confinement for discipline, safety, or any other legitimate reason.

2. If the appellant was placed in solitary confinement solely to prevent him from being housed with a foreign national, this does not constitute an acceptable reason for placing the appellant in solitary confinement. *See United States v. McPherson*, 73 M.J. 393 (C.A.A.F. 2014) (Baker, C.J., concurring in part and dissenting in part) (generally noting the concern that servicemembers could be placed in solitary confinement regardless of their behavior to avoid giving rise to relief under Article 12, UCMJ, for confining them in association with foreign nationals).

3. The unrebutted assertion in the appellant's superintendent's affidavit indicates that some Air Force official directed the appellant to be placed in solitary confinement.

4. When unit leadership complained to MCCI officials, the appellant was easily transferred to another pod that did not contain foreign nationals.

Under these particular facts, we find the appellant's approved sentence is not appropriate for this appellant and his offenses. We discuss below the relief to be granted.

*Post-Trial Processing Delay*

In *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), our superior court established guidelines that trigger a presumption of unreasonable delay, including where the record of trial is not docketed with the court of criminal appeals within 30 days of the convening authority's action. Furthermore, Article 66(c), UCMJ, empowers the service appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *Tardif*, 57 M.J. at 224.

The appellant's court-martial concluded on 30 May 2013. The convening authority took action on 18 October 2013, 141 days after the date sentence was announced. This period exceeds the 120-day standard outlined in *Moreno*, although the appellant has not complained of this delay on appeal. The appellant's case was then docketed with this court on 7 February 2014, 112 days after action. The appellant does not allege he suffered any prejudice as a result of the delay in docketing the record of trial with this court. Rather, the appellant asserts *Tardif* relief is warranted due to unreasonable and unexplained post-trial delay.

As we have noted before, the 30-day post-trial processing standard established in *Moreno* is not, by any means, a particularly onerous processing goal. In fact, a delay in this phase of post-trial processing is "the least defensible of all and worthy of the least patience." *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990). "[T]his stage involves no discretion or judgment; and, unlike an appellate court's consideration of an

appeal, this stage involves no complex legal or factual issues or weighing of policy considerations." *Id.* There may be valid reasons that justify exceeding the standard for this administrative act, but the government has offered no such reason in this case and our review of the record finds no justification for the delay.

In deciding whether to exercise our Article 66(c), UCMJ, authority in this context, we must "determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay." *Tardif*, 57 M.J. at 224. In *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006), our superior court held that a service court may grant relief even when the delay was not "most extraordinary." The court held: "The essential inquiry remains appropriateness in light of all circumstances, and no single predicate criteria of 'most extraordinary' should be erected to foreclose application of Article 66(c), UCMJ, consideration or relief." *Id.*

In light of our superior court's guidance, and keeping in mind that our overriding standard under Article 66(c), UCMJ, is what portion of the sentence "should be approved," we consider the following factors relevant in considering whether *Tardif* relief is appropriate:

1. How long did the delay exceed the standards set forth in *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006)?

2. What reasons, if any, has the government set forth for the delay? Is there any evidence of bad faith or gross indifference to the overall post-trial processing of this case?

3. Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, is there nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay?

4. Has the delay lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline?

5. Is there any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation?

6. Given the passage of time, can this court provide meaningful relief in this particular situation?

We consider no single factor dispositive, and a given case may reveal other appropriate considerations for this court in deciding whether post-trial delay has rendered an appellant's sentence inappropriate.[4]

Applying these standards to this case, we find granting sentencing relief is appropriate in this case. We recognize appellate defense counsel took 301 days to file an assignment of errors in this matter. The government's delays in obtaining convening authority action and forwarding the record for appellate review are significantly less than the time it took appellate defense counsel to file a brief. Nonetheless, the government made no effort to explain the delays in processing this case, and we find no good explanation in the record for the delays, either before or after action. The government exceeded the *Moreno* standard for docketing a case with this court by nearly a factor of four, and this came after exceeding the *Moreno* standard for obtaining action. Under the facts of this case, we find we may grant meaningful relief, and the significant delays in processing this case diminish the disciplinary effect of the appellant's sentence.

*Relief*

The appellant's sentence is therefore inappropriately severe both on the basis of his post-trial confinement conditions and the government's delay in forwarding the record of trial for our review. Having reviewed the entire record of trial, and considering both bases for finding the approved sentence inappropriate, we find the following sentence is appropriate: a bad-conduct discharge, confinement for 3 months, and reduction to E-3.

*Conclusion*

The approved findings and the sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[5] Articles 59(a) and 66(c), UCMJ.

---

[4] This court recognizes it has previously applied the non-exhausitve list of factors outlined in *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), to analyze such issues. *See, e.g., United States v. Bischoff*, 74 M.J. 664 (A.F. Ct. Crim. App. 2015). However, the factors articulated in our current opinion will more often answer the question as to how non-prejudical post-trial delay weighs in the exercise of our broad authority to determine whether relief should be granted.

[5] This court also specifically considered whether the appellant's convictions for wrongful appropriation from financial institutions were properly charged under *United States v. Lubasky*, 68 M.J. 260 (C.A.A.F. 2010), and *United States v. Sharpton*, 73 M.J. 299 (C.A.A.F. 2014). The thrust of both decisions is that the properly charged victim of a larceny (or wrongful appropriation) is the person or entity that suffers the financial loss or is deprived of the use or benefit of the property at issue. Here, sufficient evidence existed in the record to demonstrate that the financial institutions suffered a financial loss as a result of the appellant's offenses. We find these offenses were properly charged.

Accordingly, the approved findings and the sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court