# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Lieutenant Colonel RUSSELL J. GORECKI
### United States Air Force

## ACM 38654

## 8 October 2015

Sentence adjudged 15 April 2014 by GCM convened at Osan Air Base, Republic of Korea. Military Judge: Gregory O. Friedland (sitting alone).

Approved Sentence: Dismissal, confinement for 30 days, forfeiture of $4000.00 pay per month for 1 month, and a reprimand.

Appellate Counsel for the Appellant: Captain Michael A. Schrama.

Appellate Counsel for the United States: Major Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

ALLRED, TELLER, and ZIMMERMAN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

ALLRED, Chief Judge:

Appellant was tried at a general court-martial before a military judge alone. In accordance with his pleas, he was found guilty of violating a general order, wrongful appropriation, assault consummated by a battery, conduct unbecoming an officer and a gentleman, and unlawful entry, in violation of Articles 92, 121, 128, 133, and 134, UCMJ, 10 U.S.C. §§ 892, 921, 928, 933, 934. The adjudged and approved sentence

consisted of a reprimand, forfeiture of $4,000 pay per month for 1 month, 30 days of confinement, and a dismissal.[1]

Before us, Appellant argues (1) that his sentence is inappropriately severe and (2) that violation of a post-trial processing standard warrants relief. We disagree and affirm the findings and sentence.

*Background*

While serving as a squadron commander, Appellant on one occasion violated overseas curfew orders, unlawfully entered the apartment of a junior officer and took a blanket belonging to her. On another occasion, he committed assault consummated by a battery upon the same junior officer. He also engaged in a pattern of inappropriate and unprofessional behavior toward that junior officer and several other of his subordinate officers. Additional facts pertinent to the charges and specifications are discussed below.

*Sentence Severity*

Appellant argues that his sentence, which includes dismissal from the service, is unduly severe. We disagree.

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ. 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citing *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146–47 (C.A.A.F. 2010).

In the present case, Appellant served as commander of an Air Mobility Squadron in the Republic of Korea. In spring 2013, he discovered that one of his subordinates, Captain (Capt) BES,[2] was gay. He thereafter imposed upon her a relationship in which

---

[1] In ruling upon a post-arraignment defense motion alleging unreasonable multiplication of charges, the military judge dismissed Specification 2 of Charge I (dereliction of duty). This information was not reflected in the court-martial order, as it should have been. *See Manual for Courts-Martial, United States*, app. 17 at A17-1 (2012 ed.). We hereby order a corrected court-martial order. Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 10.10 (6 June 2013).

[2] It appears from the record that, during the course of Appellant's misconduct involving her, Captain (Capt) BES was promoted from the rank of First Lieutenant to Captain. For consistency, we refer to her throughout this opinion as Capt BES.

he revealed his own hetero- and homosexual interests, pressed her to communicate and socialize with him, and urged her to spend nights with him while his wife was away. From April through July 2013, Appellant sent Capt BES scores of email and Facebook messages. These communications became increasingly intimate and inappropriate. Among other things, Appellant told Capt BES, "You are hot! Absolutely so very hot." He provided graphic descriptions of his masturbation activity and sex life with his wife. He described his romances and sexual behavior with others. He pushed Capt BES to share details of her own sexual experiences. Appellant also gave Capt BES a hard drive with a pornographic music video and a CD of Japanese anime pornography depicting, inter alia, teenage girls being raped by old men.

The attention Appellant paid Capt BES caused her to feel uncomfortable and "objectified." She responded to his emails and messages only sporadically and with increasing reluctance.[3] She confided her concerns to fellow Air Force members, she sought to avoid Appellant's phone calls, and she tried to encounter him at work and elsewhere only in the presence of third persons. Capt BES was generally able to evade physical contact with Appellant. Once, however, she rebuffed him when he began to give her a back massage. And one evening, when they were outdoors, Appellant sat down, pulled Capt BES onto his lap, pressed his nose into her underarm, and made a crude comment regarding body odors.

Capt BES's troubles with Appellant came to a head on the night of 6 July 2013. In violation of military curfew and without permission from Capt BES, Appellant entered her off-base apartment after she had gone to bed. Living alone, and frightened to find her commander in her home, she fled and spent much of the night hiding and trying to sleep outside. In leaving her apartment sometime later, Appellant took without her permission a fleece blanket belonging to Capt BES.

While Capt BES was the primary victim, Appellant's misbehavior also involved others. First Lieutenant (Lt) PJJ was assigned to Appellant's squadron in early June 2013. Within a few weeks of his arrival and after a night of drinking, Appellant came to Lt PJJ's dorm room with Capt BES—ostensibly to check on the condition of the room. While there, Appellant began to massage the foot of Lt PJJ, and desisted only after Lt PJJ told him repeatedly he did not want it. Appellant asked Lt PJJ three times whether he was gay, and each time Lt PJJ denied that he was. Appellant then began to cry. He told Lt PJJ how difficult it was to be gay, and he described performing fellatio on his roommate at the United States Air Force Academy. This behavior by his commander was very disturbing to Lt PJJ.[4]

---

[3] Appellant typically signed these emails and messages with his nickname "Russ" while Capt BES continued to call him "Sir" and refer to herself by her rank.
[4] Lt PJJ testified regarding that night, "I was thinking, 'How the hell did I get myself into this situation? You can't make this s**t up.'"

On about 22 June 2013, Appellant was socializing with two of his other subordinates—Capt JMM and Staff Sergeant (SSgt) HLS—at the apartment of Capt JMM. Appellant discussed sexually explicit topics, to include oral sex with men, and he pressed Capt JMM and SSgt HLS to tell him whether they had had homosexual experiences.

On about 29 June 2013, Appellant was traveling in a taxi cab with Capt BES, Lt PJJ, Capt JMM, and another subordinate officer—Capt IOA. Appellant told these officers he wanted to play a game called "truth time." In crude and graphic terms, he then asked whether the officers ever masturbated, or engaged in anal sex or anilingus. He asked Capt IOA about the size of his penis. Appellant described his own masturbation and his first experience with a prostitute, and he reported that he had tasted his own semen. It appears the junior officers were not happy with this behavior by their squadron commander.[5]

On numerous occasions, and even after he had himself violated curfew to unlawfully enter the apartment of Capt BES, Appellant lectured his subordinates on the importance of obeying military curfew. By all accounts—including his own admissions—Appellant's misconduct had a deeply negative impact upon his individual victims and upon his effectiveness as a commander. Having considered the arguments of counsel, a clemency recommendation made by the trial judge, and the entire record in this case, we find the approved sentence appropriate.[6]

---

[5] Lt PJJ testified, "I was kind of shocked. I was quiet. I didn't really know what to think, but when we got out of the taxi, Capt [JMM] and I said that the situation was pretty f'ed up."

[6] The military judge in this case provided the convening authority a detailed clemency recommendation, as follows:

> In consideration of the accused's 261 months of service to the nation, balanced against his 3 and a half months of misconduct, coupled with his officer performance reports and the 41 character statements in his sentencing evidence, I recommend the convening authority consider entering into a post-trial agreement with Lieutenant Colonel Gorecki with the following suggested terms:
>
> > The convening authority agrees to mitigate the dismissal adjudged by this court to forfeitures of $2,000 pay per month for 24 months, and confinement for 24 months, with the confinement suspended for 24 months subject to the following conditions.
>
> In consideration of the agreement by the convening authority, Lieutenant Colonel Gorecki agrees to the following eight conditions:
>
> > He will not consume alcoholic beverages during the suspended portion of the mitigated punishment;
> > He will be assigned to a 21R Joint Designation Authorization Listing (JDAL) billet for 24 months;
> > He will have no contact or communications with Captain [BES], Captain [JMM], Captain [IOA], Lieutenant [PJJ], and Staff Sergeant [HLS] during the suspended portion of the mitigated punishment;

*Post-Trial Processing Delay*

Thirty-four days elapsed between the convening authority's action and the docketing of this case before this court.[7]  Under *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), the record should have been docketed with this court within 30 days of the convening authority's action.

We review de novo an appellant's claim that he has been denied his due process right to a speedy post-trial review and appeal.  *Moreno*, 63 M.J. at 135.  Because the 34-day period in this case is facially unreasonable, *see id.* at 142, we examine the claim under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972):  "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice."  *Moreno*, 63 M.J. at 135.  If we are able to conclude directly that any error was harmless beyond a reasonable doubt, we do not need to engage in a separate analysis of each factor.  *See United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006).

Appellant does not argue that he has been personally prejudiced by the delay.  While we agree that *Moreno* violations are unacceptable, we find beyond a reasonable doubt that Appellant was not harmed by the four-day delay and is thus not entitled to relief under *Moreno*.

A finding of harmless error does not end the inquiry, as we may grant sentence relief under Article 66(c), UCMJ, for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a).  *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24–25 (C.A.A.F. 2006).  In *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App.

---

He will suspend his Facebook account during the suspended portion of the mitigated punishment;

He must take an Air Force fitness assessment test, twice a year, at least 6 months apart, and score more than 90 points on each test during the suspended portion of the mitigated punishment;

He will seek mental health counseling with the Air Force mental health professionals, and will attend monthly meetings during the suspended portion of the mitigated punishment;

He will apply for retirement on 29 June 2015; and,

He will not contest an officer grade determination initiated upon him upon his application for retirement in accordance with AFI 36-3203.

If the accused violates the provisions of the post-trial agreement and the suspended confinement is vacated, I recommend the convening authority waive automatic forfeitures for the benefit of the accused's dependents for a period of 21 months.

[7] The convening authority took action on 18 July 2014, and the present case was docketed with us on 21 August 2014.  Appellant calculates the elapsed time to have been 33 days.  We concur, however, with the Government's calculation of 34 days.

2015), we identified a list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Those factors include how long the delay exceeded appellate review standards, the reasons for the delay, whether the government acted with bad faith or gross indifference, evidence of institutional neglect, harm to the appellant or to the institution, whether relief is consistent with the goals of both justice and good order and discipline, and whether this court can provide meaningful relief. *Id.* No single factor is dispositive and we may consider other factors as appropriate. *Id.*

We have examined the entirety of the post-trial process. Aside from the four-day delay in docketing the record with this court, the remainder of the post-trial activities occurred within established time standards, and we detect nothing that would suggest this is a case in which the public's perception of the fairness and integrity of the system could reasonably he questioned. We, therefore, decline to grant *Tardif* relief.

### *Conclusion*

The findings and the sentence are correct in law and fact, and no error prejudicial to the substantial rights of Appellant occurred. Articles 59(a), UCMJ, and Article 66(c), UCMJ. Accordingly, the findings and the sentence are **AFFIRMED**.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38654