# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––––

**No. ACM S32784**

––––––––––––––––––

**UNITED STATES**
*Appellee*

v.

**Jaden T. FLOYD**
Senior Airman (E-4), U.S. Air Force, *Appellant*

––––––––––––––––––

Appeal from the United States Air Force Trial Judiciary

Decided 3 February 2025

––––––––––––––––––

*Military Judge*: Bradley J. Palmer.

*Sentence*: Sentence adjudged 18 December 2023 by SpCM convened at Whiteman Air Force Base, Missouri. Sentence entered by military judge on 23 January 2024: Bad-conduct discharge, confinement for 3 months, reduction to E-1, and a reprimand.

*For Appellant*: Major Nicole J. Herbers, USAF.

*For Appellee*: Major Brittany M. Speirs, USAF; Captain Heather R. Bezold, USAF; Mary Ellen Payne, USAF.

Before JOHNSON, MENDELSON, and WARREN, *Appellate Military Judges*.

Judge MENDELSON delivered the opinion of the court, in which Chief Judge JOHNSON and Judge WARREN joined.

––––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

––––––––––––––––––

MENDELSON, Judge:

A special court-martial composed of a military judge convicted Appellant, consistent with his pleas and pursuant to a plea agreement, of one specification of larceny, in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for three months, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings or sentence.

Appellant raises three issues on appeal: (1) whether the Government's post-trial delay entitles Appellant to appropriate relief; (2) whether the conditions of Appellant's confinement subjected him to cruel and unusual punishment in violation of the Eighth Amendment of the Constitution[2] and Article 55, UCMJ, 10 U.S.C. § 855, or render his sentence inappropriately severe; and (3) whether the sentence that included a punitive separation is inappropriately severe.[3] We find no prejudicial error. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, we affirm the findings and sentence.

## I. BACKGROUND

While assigned at Whiteman Air Force Base, Missouri, Appellant's unit relocated to a different building. After the move, some items of Aircrew Flight Equipment (AFE) and Survival, Evasion, Resistance, and Escape (SERE) equipment belonging to his unit were left behind in the original building. Between on or about 1 August 2022 and on or about 15 August 2022, Appellant took more than 200 items of the AFE and SERE equipment that were left behind, which had a total depreciated value of $18,200.00. The stolen military equipment was discovered in Appellant's garage by friends of his then-wife, when the friends came to Appellant's house to check on a cat.

## II. DISCUSSION

### A. Post-Trial Processing

Appellant's case was not docketed with the court until 155 days after he was sentenced. Appellant contends he is entitled to sentence relief because the delay exceeded the threshold for facially unreasonable post-trial delay and therefore violated his due process right to speedy appellate review. *See United*

---

[1] Unless otherwise noted, references in this opinion to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] U.S. CONST amend. VIII.

[3] Appellant personally raises issues (2) and (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

*States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006)). Appellant also contends the delay renders his sentence inappropriate, warranting relief under Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2). We find no basis for relief.

### 1. Additional Background

Appellant was sentenced on 18 December 2023 and the military judge entered the judgment on 23 January 2024—36 days later. According to the chronology contained within the record of trial, the detailed court reporter worked on six different courts-martial, either in session or conducting transcription, in the four months following Appellant's sentencing. On 8 April 2024—112 days after Appellant's sentencing—the detailed court reporter requested assistance for another court reporter to transcribe Appellant's case "in an attempt to meet the Moreno date."[4] A different court reporter began transcribing Appellant's case the following day and completed the transcription two days later on 11 April 2024. Between 25 April 2024 and 6 May 2024, the base legal office completed assembly of the record of trial and mailed the record to the designated office for appellate review.[5] The record was docketed with this court on 21 May 2024, 155 days after sentencing. After docketing, this court granted Appellant's two requests for an enlargement of time to file his assignment of errors, totaling 90 days.

### 2. Law

"[C]onvicted servicemembers have a due process right to timely review and appeal of [their] courts-martial convictions." *Moreno*, 63 M.J. at 135 (citations omitted). We review the question of whether an appellant's due process rights are violated because of post-trial delay de novo. *Id.*; *Livak*, 80 M.J. at 633 (citation omitted).

In a due process analysis, a presumption of unreasonable delay arises when a case is not docketed with this court within 150 days from sentencing. *Livak*, 80 M.J. at 633 (citation omitted). This threshold, adapted from the standards set forth in *Moreno*, "is not, by any means, a particularly onerous processing goal." *United Sates v. Gay*, 74 M.J. 736, 743–44 (A.F. Ct. Crim. App. 2015). "In

---

[4] The "Moreno date" is in reference to *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006).

[5] The timeline for completing and mailing the record of trial comes from the declaration prepared by the Chief of Military Justice at the base legal office, that we attached to the record of trial upon the Government's unopposed motion. We consider the declaration in accordance with *United States v. Jessie*, 79 M.J. 437, 442 (C.A.A.F. 2020) (observing a Court of Criminal Appeals is allowed to accept affidavits or declarations when the issue is raised but is not fully resolvable by the materials in the record).

fact, a delay in this phase of post-trial processing is 'the least defensible of all and worthy of the least patience.'" *Id.* (quoting *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990)). "[T]his stage involves no discretion or judgment; and, unlike an appellate court's consideration of an appeal, this stage involves no complex legal or factual issues or weighing of policy considerations." *Id.* (alteration in original).

A presumptively unreasonable delay triggers an analysis of the four factors in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). While a presumptively unreasonable delay satisfies the first factor, the Government "can rebut the presumption by showing the delay was not unreasonable." *Id.* at 142. When assessing the fourth factor of prejudice, "we consider the interests of prevention of oppressive incarceration pending appeal; minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and limitation of the possibility that . . . grounds for appeal, and . . . defenses in case of reversal and retrial, might be impaired." *United States v. Cabuhat*, 83 M.J. 755, 773 (A.F. Ct. Crim. App. 2023) (omissions in original) (citing *Moreno*, 63 M.J. at 138–39). In the absence of such prejudice, a due process violation exists only when "the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Even in the absence of a due process violation, we "may provide appropriate relief if [Appellant] demonstrates . . . excessive delay in the processing of the court-martial after the judgment was entered into the record." Article 66(d)(2), UCMJ. This authority under Article 66(d)(2), UCMJ, to grant relief for excessive post-trial delay does not require a showing of "actual prejudice" within the meaning of Article 59(a), UCMJ. *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (citation omitted).[6] The essential inquiry is whether, given the post-trial delay, the sentence "remains appropriate[ ] in light of all circumstances." *Toohey*, 63 M.J. at 362–63 (citation omitted).

In determining whether the sentence remains appropriate in light of post-trial processing delay, we consider the following factors:

---

[6] The Court in *Tardif* applied a version of Article 66, UCMJ, which pertinent language is substantially similar to the 2019 *MCM*.

1. How long did the delay exceed the standards set forth in [*Moreno*]?

2. What reasons, if any, has the [G]overnment set forth for the delay? Is there any evidence of bad faith or gross indifference to the overall post-trial processing of this case?

3. Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, is there nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay?

4. Has the delay lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline?

5. Is there any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation?

6. Given the passage of time, can this court provide meaningful relief in this particular situation?

We consider no single factor dispositive, and a given case may reveal other appropriate considerations for this court in deciding whether post-trial delay has rendered an appellant's sentence inappropriate.

*Gay*, 74 M.J. at 744 (footnote omitted).

### 3. Analysis

After careful consideration of the *Barker* factors, we conclude there is no due process violation. While the 155 days from sentencing to docketing is presumptively unreasonable, it only exceeded the 150-day threshold by five days. In examining the reasons for the delay, we note the chronology evidences the court reporter attended to the demands of numerous other cases but fails to explain why the Government waited until day 112 to request the assistance of another court reporter to transcribe Appellant's case. Once another court reporter was assigned to assist with transcription, the post-trial process moved swiftly, with transcription completed in three days and the completed record of trial mailed to the designated office for appellate review 25 days later.

While we find the first two *Barker* factors weigh slightly in Appellant's favor, we find the remaining two factors do not. Appellant did not assert his right to timely appellate review until filing his brief with this court, after requesting and receiving two enlargements of time totaling 90 days. With respect to prejudice, Appellant does not claim oppressive incarceration pending appeal, nor does he claim particularized anxiety and concern. Appellant instead contends

the delay interfered with his ability to fully participate in his appeal. More specifically, Appellant argues that, during the intervening time between sentencing and docketing, he was diagnosed with a chronic disease and has progressively suffered decline in his memory and ability to communicate. While we acknowledge Appellant's debilitating medical condition, we note he was capable of assisting in his appeal by personally raising two issues. We also find the delay is not "so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362.

Our balancing of the *Barker* factors leads us to conclude that Appellant was not denied his due process right to speedy post-trial processing. Additionally, recognizing our authority under Article 66(d), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See Tardif*, 57 M.J. at 225. In considering the factors enumerated in *Gay*, 74 M.J. at 742, we are concerned that the 112-day delay in starting the transcription of Appellant's court-martial demonstrates a lack of urgency in post-trial processing. However, we find no evidence of bad faith in this particular case, and this court has not found that delays in transcribing the record have become an institutional problem.[7] Moreover, we find no evidence of harm (either to Appellant or institutionally) caused by the delay in this particular case, nor has the delay lessened the disciplinary effect of any particular aspect of the sentence. *See Gay*, 74 M.J. at 744. Accordingly, on balance, we find the *Gay* factors do not weigh in favor of sentence relief.

## B. Conditions of Confinement

Appellant asserts—for the first time on appeal—that the conditions of his confinement subjected him to cruel and unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ, or otherwise render his sentence inappropriately severe. We find Appellant's Eight Amendment and Article 55, UCMJ, claims are precluded because he did not exhaust administrative remedies before petitioning this court for relief. We also find that the record contains no support to grant sentencing relief under Article 66, UCMJ.

### 1. Additional Background

Near the conclusion of Appellant's court-martial, the military judge confirmed with Appellant that trial defense counsel had advised him in writing of

---

[7] *But cf. United States v. Valentin-Andino*, No. ACM 40185 (f rev), 2024 CCA LEXIS 223, at *17–19 (A.F. Ct. Crim. App. 7 Jun. 2024) (unpub. op.) (summarizing remand of cases for post-trial processing errors and describing the trend as one that "happen[s] at an alarming frequency in the Air Force"), *rev. granted,* __ M.J. __, No. 24-0208/AF, 2024 CCA LEXIS 571 (C.A.A.F. 30 Sep. 2024).

his post-trial and appellate rights. This document, which is included in the record as an appellate exhibit, specifically advised Appellant that to obtain relief for poor conditions of confinement he "ordinarily must first exhaust every administrative avenue available to try to correct the issue," including submitting "a complaint to the confinement facility, preferably in writing," requesting "relief through clemency, if known at the time," and filing a complaint under Article 138, UCMJ, 10 U.S.C. § 938. The document underscored the importance of notifying trial defense counsel "as soon as possible" of any issues and advised Appellant that trial defense counsel could help him "with all of these procedures."

After Appellant was sentenced on 18 December 2023, he entered the confinement facility at Whiteman Air Force Base, where he remained to serve his three-month sentence. Appellant's request for relief from the convening authority, dated 22 December 2023, did not address Appellant's conditions of confinement.

On appeal, Appellant moved to attach to the record a declaration dated 4 October 2024 in which he alleges poor conditions of confinement. Specifically, he alleges he spent "four to five days in solitary confinement" during which time he did not have access to a phone or mental health medication; experienced delays in the administration of his psychotropic medications; was served inedible food on multiple occasions; and spent weeks without access to sunlight and fresh air. Appellant's declaration does not address the confinement facility's grievance process, but Appellant avers that "[e]ach time [he] did not get [his] medications, [he] would request them, and the confinement personnel would eventually provide them" and that when his meal was partially inedible he "would tell the confinement staff, but they did not do anything." In his declaration, Appellant further states that while in confinement he began experiencing symptoms of what was later diagnosed a chronic disease, to include generalized weakness, tremors, and falls. Attached to Appellant's declaration is an excerpt from the journal he kept while in confinement, and video clips purporting to show his progressively declining physical condition after his release from confinement.

In response, the Government moved to attach a declaration from the noncommissioned officer in charge (NCOIC) of the Whiteman Air Force Base confinement facility. According to the NCOIC's declaration, Appellant's correctional treatment file does not contain any written complaints from Appellant. Attached to the declaration are medication administration logs and call logs, the latter of which logs dozens of calls made by Appellant including calls to "legal" and his First Sergeant.

**2. Law**

We review de novo "whether an appellant has been subjected to impermissible conditions of confinement in violation of the Eighth Amendment or Article 55, UCMJ." *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)).

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the [United States] Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015) (citation omitted), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938 [2000]."

*Id*. (omission and second alteration in original) (footnotes omitted); *see also United States v. Pullings*, 83 M.J. 205, 206 (C.A.A.F. 2023) (applying the *Lovett* test to claims of cruel and unusual confinement conditions).

"Since a prime purpose of ensuring administrative exhaustion is the prompt amelioration of a prisoner's conditions of confinement, courts have required that these complaints be made while an appellant is incarcerated." *Wise*, 64 M.J. at 471–72. "Exhaustion requires [an a]ppellant to demonstrate that two paths of redress have been attempted, each without satisfactory result." *Id.* at 471. "[A]bsent some unusual or egregious circumstance," an appellant must demonstrate "he has exhausted the prisoner-grievance system" at the confinement facility "and that he has petitioned for relief under Article 138[, UCMJ]." *Id.* (citation omitted). The exhaustion requirement "promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review]." *Id.* (alterations in original) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)).

The United States Court of Appeals for the Armed Forces (CAAF) has held that an appellate court may grant relief due to confinement conditions even in

the absence of an Eighth Amendment or Article 55, UCMJ, violation, provided it finds a legal error that warrants relief under Article 66, UCMJ. *United States v. Gay*, 75 M.J. 264, 268 (C.A.A.F. 2016). However, the CAAF has "fully recognize[d] that [Courts of Criminal Appeals (CCAs)] 'are not a clearinghouse for post-trial confinement complaints or grievances,' and '[o]nly in very rare circumstances' will sentence relief be granted 'when there is no violation of the Eighth Amendment or Article 55, UCMJ.'" *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017)).

When evaluating an appellant's cruel and unusual punishment claims under the Eighth Amendment or Article 55, UCMJ, this court has the authority to consider evidence outside the record. *United States v. Jessie*, 79 M.J. 437, 442–45 (C.A.A.F. 2020). In contrast, when performing sentence appropriateness review under Article 66, UCMJ, this court does *not* have the authority "to consider outside-the-record evidence submitted in support of an appellant's Eighth Amendment or Article 55, UCMJ, claims." *United States v. Willman*, 81 M.J. 355, 356 (C.A.A.F. 2021).

### 3. Analysis

As an initial matter, we note we may consider the declarations of Appellant and the NCOIC of the confinement facility to evaluate Appellant's claims of cruel and unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ, despite these declarations coming from outside the record. *See Jessie,* 79 M.J. at 442–45. In his declaration Appellant avers that "[e]ach time [he] did not get [his] medications, [he] would request them, and the confinement personnel would eventually provide them," and that when his meal was partially inedible he "would tell the confinement staff, but they did not do anything." However, Appellant does not contend that he exhausted administrative remedies by filing a complaint with the confinement facility or petitioning for relief under Article 138, UCMJ, nor does the record suggest he exhausted those remedies, despite being advised in writing of the requirement to do so. The declaration from the NCOIC of the confinement facility provides that Appellant's correctional treatment file does not reflect any written complaints. Moreover, Appellant concedes in his brief filed with this court that he did not file an Article 138, UCMJ, complaint.

Appellant contends that his "deteriorating mental and physical health throughout confinement, combined with the lack of unit support and isolation, left him without real access to the outside world and ability to file [an] Article 138 complaint." Despite Appellant's contentions, we note he was capable of creating a diary of events while in confinement and made dozens of phone calls, to include calls to "legal" and his First Sergeant, as evidenced by the confinement call log. We are unconvinced that Appellant faced such "unusual or

egregious circumstances" to excuse his failure to exhaust administrative remedies.[8] *See Wise*, 64 M.J. at 471. Accordingly, we find Appellant's claim of cruel and unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ, cannot succeed because he did not exhaust administrative remedies before petitioning this court for relief, and the record does not establish any unusual or egregious circumstances that would justify the failure to exhaust.

Appellant also argues, even in the absence of an Eighth Amendment of Article 55, UCMJ, violation, this court should grant sentencing relief under our Article 66(d), UCMJ, mandate to approve only so much of the sentence we determine, on the basis of the entire record, should be approved. However, Appellant's declaration about the conditions of his confinement is neither part of the record of trial nor does it qualify as a matter attached to the record of trial, and we cannot consider evidence outside of the "entire record" in determining sentence appropriateness under Article 66, UCMJ. *Willman*, 81 M.J. at 361–62 (citing *Jessie*, 79 M.J. at 440–41).[9] Thus, we are precluded from considering Appellant's statements contained in his declaration, and we find the record contains no support to grant sentencing relief on the basis of Appellant's claims about the conditions of his confinement.

## C. Sentence Severity

Appellant contends his sentence is inappropriately severe. We disagree.

### 1. Additional Background

Appellant entered into a plea agreement with the convening authority, in which Appellant agreed to be sentenced by military judge and which required the military judge to enter a sentence including between three and nine months of confinement. The plea agreement did not contain any other sentencing limitations.

During the presentencing portion of the court-martial, the Government introduced into evidence the Appellant's performance report, rating him as meeting "some but not all expectations;" two letters of counseling, documenting Appellant's failure to follow standards; a letter of reprimand for failing to attend

---

[8] We are not unmoved by the current debilitating effects of Appellant's health condition. However, as described by Appellant, the onset of his current severe symptoms largely materialized after he completed his term of confinement.

[9] *See* R.C.M. 1103(b)(2) (contents of the record) and R.C.M. 1103(b)(3) (matters attached to the record). In addition, the "entire record" includes briefs and arguments that appellate counsel and an appellant personally present regarding matters that are already in the record of trial, R.C.M. 1103(b)(2), or have been attached to the record of trial under R.C.M. 1103(b)(3). *See Jessie*, 79 M.J. at 440–41 (citing *United States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988)).

a mandatory appointment; and a record of nonjudicial punishment imposed for dereliction of duties. Additionally, the Government presented witnesses who testified about the nature of the stolen military equipment that was seized from Appellant's garage.

Appellant's trial defense counsel introduced into evidence 12 exhibits, including seven statements attesting to Appellant's good character and positive rehabilitation potential. The defense exhibits also included family photographs, an achievement certificate for completing a recovery program, and a letter of appreciation for his volunteerism. Additionally, Appellant presented an unsworn statement, specifically discussing traumatic experiences in his childhood, academic and athletic success in school, religious and volunteer activities, and his struggles with mental health for which he received in-patient treatment.

### 2. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2016). We may affirm only as much of a sentence as we find correct in law and fact, and which we determine should be approved. Article 66(b), UCMJ. In reviewing judge-alone sentencing, we "must consider the appropriateness of each segment of a . . . sentence and the appropriateness of the sentence as a whole." *United States v. Flores*, 84. M.J. 277, 278 (C.A.A.F. 2024). We consider each "particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although appellate courts are empowered to "do justice," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

### 3. Analysis

Appellant asks that we reduce his sentence. We are not persuaded that his sentence, to include three months' confinement and a bad-conduct discharge, is inappropriately severe.

Appellant was convicted of stealing more than 200 items of military equipment, which had a total depreciated value of $18,200.00. His offense carries a maximum punishment of ten years' confinement and a dishonorable discharge. The severity of the maximum punishment speaks to the seriousness of Appellant's crime. By entering into a plea agreement, saving the Government from the time and effort of presenting evidence sufficient to prove his guilt, Appellant limited his confinement exposure to between three and nine months' confinement. The military judge sentenced Appellant to the minimum confinement allowed under the plea agreement. The plea agreement did not contain

any limitation on other aspects of the sentence, and the military judge adjudged a bad-conduct discharge.

Having considered the nature and seriousness of Appellant's offense, and matters contained in the entire court-martial record, including his record of service, all matters submitted in mitigation, and his unsworn statement, we conclude the adjudged sentence fairly and appropriately punishes Appellant for his misconduct. Therefore, the sentence as entered is not inappropriately severe.

### III. Conclusion

As entered, the findings are correct in law, the sentence is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). *See* National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 542(b)(1)(A), 134 Stat. 3388, 3611–12 (2021). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court