# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38977**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Matthew THOMAS**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 6 June 2017

————————————

*Military Judge:* Wendy Sherman (arraignment); James R. Dorman (trial).

*Approved sentence:* Dishonorable discharge, confinement for 6 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 3 September 2015 by GCM convened at Sheppard Air Force Base, Texas.

*For Appellant:* Major Lauren A. Shure, USAF; Captain Patrick A. Clary, USAF.

*For Appellee:* Major G. Matt Osborn, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, and SPERANZA, *Appellate Military Judges.*

Senior Judge JOHNSON delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge SPERANZA joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

JOHNSON, Senior Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification of attempting to commit a lewd act on a child under the age of 16 years in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880.[1] The court-martial sentenced Appellant to a dishonorable discharge, confinement for six months, total forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

Before us, Appellant raises a single assignment of error: that the evidence was legally and factually insufficient to sustain his conviction. In addition, we consider whether Appellant is entitled to relief due to a facially unreasonable delay in the post-trial processing of his case.[2] Finding no relief is warranted on either count, we affirm the findings and sentence.

## I. BACKGROUND

Appellant was in training at Sheppard Air Force Base (AFB), Texas, when a personal advertisement in the "Casual Encounters" section of the Craigslist website attracted his attention. The author purported to be a dependent looking for "an Air Force man" in Wichita Falls, Texas. Appellant responded to the ad and began an electronic correspondence with "Tina," a fictional 14-year-old female dependent residing on Sheppard AFB who was created by Air Force

---

[1] The court-martial found Appellant not guilty of attempting to persuade, induce, or entice a child under the age of 18 years to engage in criminal sexual activity by using a means or facility of interstate commerce, in violation of Article 134, UCMJ, 10 U.S.C. § 934.

[2] This court specified the following issue for the parties to brief:

> DOES THE PRESUMPTIVELY UNREASONABLE DELAY BE-
> TWEEN THE CONCLUSION OF APPELLANT'S TRIAL AND THE
> CONVENING AUTHORITY'S ACTION CONSTITUTE A VIOLA-
> TION OF APPELLANT'S DUE PROCESS RIGHT TO SPEEDY POST-
> TRIAL AND APPELLATE REVIEW OR OTHERWISE WARRANT
> RELIEF FROM THIS COURT? UNITED STATES V. MORENO, 63
> M.J. 129, 142 (C.A.A.F. 2006) (PRESUMPTION OF UNREASONA-
> BLE DELAY TRIGGERING FOUR-FACTOR ANALYSIS WHERE
> CONVENING AUTHORITY ACTION IS NOT TAKEN WITHIN 120
> DAYS OF TRIAL); UNITED STATES V. TARDIF, 57 M.J. 219, 224
> (C.A.A.F. 2002) (COURTS OF CRIMINAL APPEALS HAVE AU-
> THORITY UNDER ARTICLE 66(C), UCMJ, TO GRANT RELIEF FOR
> EXCESSIVE POST-TRIAL DELAY WITHOUT FINDING A DUE
> PROCESS VIOLATION OR ACTUAL PREJUDICE TO THE APPEL-
> LANT).

Office of Special Investigations (AFOSI) Special Agent (SA) TK, stationed in Quantico, Virginia.

When Appellant initially responded to "Tina's" ad, she informed him that she was only 14 years old, but if he was "still interested" she advised him to contact her on Yahoo! Messenger. Appellant did so. Their month-long correspondence eventually turned sexually explicit. Appellant described various sexual acts he wanted to perform with "Tina," and he sent her a photo of his penis as well as seven videos of himself masturbating.

Appellant pressed "Tina" to agree to meet with him for a sexual encounter. Eventually they arranged to meet on a weekday morning when she purportedly would not be going to school and would be alone. After Appellant parked by the on-base residence "Tina" identified, several AFOSI agents emerged from the house and apprehended him.

## II. DISCUSSION

### A. Legal and Factual Sufficiency of the Evidence

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The "reasonable doubt" standard does not require that the evidence be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

Appellant was convicted of a single specification under Article 80, UCMJ, alleging an

> attempt to commit a lewd act upon a child who had not attained the age of 16 years, to wit: by intentionally communicating indecent language, and transmitting video of his exposed genitalia to an undercover AFOSI agent, who he believed to be a 14 year old girl, with an intent to gratify the sexual desire of [Appellant].

As the military judge instructed the members, in order to secure a conviction the Prosecution was required to prove:

> (1) That . . . [Appellant] did certain acts, that is: intentionally communicating indecent language and transmitting video of his exposed genitalia to an undercover [AFOSI] agent who he believed to be a 14-year-old girl;
>
> (2) That the acts were done with the specific intent to commit the offense of sexual abuse of a child;
>
> (3) That the acts amounted to more than mere preparation; that is, they were a substantial step and a direct movement toward the commission of the intended offense; and
>
> (4) That such acts apparently tended to bring about the commission of the offense of sexual abuse of a child; that is, the acts apparently would have resulted in the actual commission of the offense of sexual abuse of a child, except for a circumstance unknown to [Appellant] that the actual recipient of the alleged communications was an [AFOSI] agent, a fact which prevented completion of the offense.
>
> . . .
>
> The elements of sexual abuse of a child are:
>
> (1) That [Appellant] committed a lewd act upon a child, to wit: intentionally communicating indecent language and transmitting video of his exposed genitals; and
>
> (2) That at the time, the child had not attained the age of 16 years.
>
> . . .
>
> "Lewd act" means:
>
> (A) intentionally exposing one's genitalia . . . to a child by any means, including via any communication technology, with an intent to arouse or gratify the sexual desires of [Appellant]; or

(B) intentionally communicating indecent language to a child by any means, including via any communication technology, with an intent to arouse or gratify the sexual desires of [Appellant].

*See* 10 U.S.C. §§ 880, 920b; Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 3–4–1 and ¶ 3–45–7.

At trial, the Prosecution introduced the testimony of SA TK, who created and impersonated "Tina"; the testimony of several AFOSI agents at Sheppard AFB involved in the investigation and apprehension of Appellant; and a stipulation of expected testimony from the Defense Computer Forensics Laboratory examiner who recovered Appellant's Yahoo! Messenger chat log with "Tina" from Appellant's phone. The Prosecution also introduced the communications between Appellant and "Tina," which included Appellant's graphic descriptions of various sexual acts he wanted to perform on and with her. In addition, the Prosecution introduced the seven masturbation videos and one penis photo Appellant sent "Tina."

Appellant does not deny that he communicated with "Tina," that she told him she was only 14 years old, or that his messages and videos were "lewd." Rather, his argument is the same one he made at trial: he never *believed* "Tina" was actually a 14-year-old girl. He contends he thought "Tina" was an adult playing the role of an underage girl. In support of this contention, Appellant testified at trial regarding eight prior occasions when he used Craigslist "Casual Encounters" listings to arrange sexual encounters with strangers. Appellant testified that on each of these occasions he met with adults, two of whom substantially misrepresented their actual identity: a woman who portrayed herself as substantially younger and thinner than she was, and a man who portrayed himself as a woman. However, Appellant testified he had not previously encountered an adult who portrayed himself or herself as a child on Craigslist.

We find Appellant's argument unconvincing. "Tina" was consistently portrayed as 14 years old. Her initial response to Appellant's contact stated: "I am a dependent but probably not what your [sic] thinking. I'm a 14 year old, very mature, blond hair, blue eyed, petite cutie looking for a mature Air Force man to nurture and teach my [sic] . . . If your [sic] still interested lets [sic] chat (yahoo messenger [username]) . . ." Later, when Appellant asked her what she did "for a living," "Tina" responded "lol this is where the discussion ends. haha im [sic] a student 14." Appellant responded "Wow ur 14?! Ur into older guys huh? Lol." At Appellant's persistent request, "Tina" later sent Appellant two photos

purportedly depicting her face.[3] On cross-examination, Appellant acknowledged receiving them and that they appeared to depict a girl under the age of 16. Appellant responded to the first of these by text: "U look good baby, I can't wait to f[*]ck u, u sure u can't sneak out tonight for a bit?"

Appellant admitted on cross-examination that in a text conversation that spanned a month and consisted of over 500 messages, at no point did he attempt to clarify that "Tina" was in fact an adult rather than a child, nor was there any indication in the messages that "Tina" was anything other than a 14-year-old girl. To the contrary, "Tina" repeatedly referred to her school schedule, and Appellant requested that she "skip" school and "sneak out" of her house to meet with him. We are not persuaded by Appellant's self-serving testimony that, despite the absence of any suggestion in the messages that he doubted "Tina's" age, he nevertheless did not believe she was 14 years old.

Furthermore, we are not moved by Appellant's claims that he is attracted to more mature women. The texts evince no hesitation on Appellant's part in sharing explicit sexual images and messages and attempting to arrange a sexual encounter with someone purporting to be a 14-year-old child. In fact, rather than shifting his attention to the pursuit of older females, Appellant was notably persistent in continuing to text "Tina" even when she fell silent for periods of five, and later ten, consecutive days before resuming the exchange. Regardless of Appellant's professed preferences, we are convinced he sent his indecent messages and videos to someone he believed to be 14 years old.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," *Barner*, 56 M.J. at 134, the evidence was legally sufficient to support a finding beyond a reasonable doubt that Appellant intentionally transmitted indecent language and videos of his exposed genitalia to someone he believed to be a child under the age of 14 years, with the intent to gratify his sexual desires. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction is therefore both legally and factually sufficient.

## B. Post-Trial Delay

Appellant's court-martial concluded on 3 September 2015 at Sheppard AFB, Texas. The convening authority, located at Keesler AFB, Mississippi, took action 145 days later on 26 January 2016. In *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), our superior court established a presumption of

---

[3] As SA TK explained, these were not pictures of an actual child but photos of a female AFOSI agent that had been digitally "age regressed" to a target age of 13.

facially unreasonable post-trial delay when the convening authority does not take action within 120 days of trial.

Because there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005), *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

As to the first factor—the length of the delay—the 145 days that elapsed from the conclusion of Appellant's trial until the convening authority took action exceeded the *Moreno* standard by 25 days. This weighs moderately in Appellant's favor.

As to the second factor—the reasons for the delay—the Government has offered the declarations of the staff judge advocate (SJA) at Sheppard AFB and the chief of military justice in the office of the convening authority's SJA, which provide a detailed timeline for the post-trial processing of Appellant's case. The Government points to the high military justice workload at Sheppard AFB in the four months following Appellant's court-martial and to the number of cases being processed by the convening authority's SJA at the end of 2015 as reasons for the delay. The Government also points to the 29 days that elapsed between the court reporter sending the transcript to the military judge for review and the military judge's completion of that review. Although we are not convinced Appellant's case could not have been processed somewhat more rapidly, absolute efficiency is not the test for due process. We find the delay is primarily attributable to the volume of work at the base legal office and the office of the convening authority's SJA, to reasonable decisions regarding the prioritization of that work, and to a lesser extent to the military judge. Under the circumstances the delay attributable to the Government was not excessive, and thus this factor weighs in favor of the Government.

As to the third factor—Appellant's assertion of his right to timely review—Appellant notes and the Government acknowledges that Appellant, through counsel, complained of the post-trial delay in his clemency submission dated 13 January 2016. However, waiting until clemency to raise the concern, after 132 days had already elapsed and less than two weeks before the convening

authority took action, minimized the complaint's significance. We find this factor does not weigh substantially in Appellant's favor.

Turning to the fourth factor—prejudice—we note *Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39. Where, as here, an appellant does not prevail on the substantive grounds of his appeal, there is no oppressive incarceration. *Id.* at 139. Similarly, where Appellant's substantive appeal fails, his ability to present a defense at a rehearing is not impaired. *Id.* at 140. However, under the facts of this case, we do find Appellant had a "particularized anxiety or concern that is distinguishable from the normal anxiety experienced" by appellants awaiting an appellate decision. *See id.* Specifically, Appellant's clemency request asked the convening authority to "disapprove or commute a portion of the adjudged [six-month term of] confinement." Although the convening authority could have disapproved some or all of Appellant's confinement even if it had been served in full,[4] Appellant nevertheless had an interest in having the convening authority act on his request sooner rather than later in order to potentially minimize the amount of time he actually spent in confinement. Moreover, "[a]n appellant may suffer constitutionally cognizable anxiety regardless of the outcome of his appeal." *Id.*

Yet, while cognizable, the weight of the prejudice is slight in this case. As noted, the convening authority's ability to disapprove some portion of confinement was not impacted by the delay. In addition, Appellant faced a maximum possible punishment that included 15 years of confinement; in the face of this and the SJA's recommendation that the sentence be approved as adjudged, the convening authority was unlikely to find Appellant's request persuasive. Ultimately, the convening authority evidently did not find Appellant's clemency presentation sufficiently compelling to warrant any relief.

Although the issue is a close one, considering all the factors together we do not find a violation of Appellant's due process right to timely post-trial processing and appeal.

Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J.

---

[4] *See United States v. Jones*, No. ACM 39140, 2017 CCA LEXIS 310, at *6 (A.F. Ct. Crim. App. 28 Apr. 2017) (unpub. op.).

264 (C.A.A.F. 2016),[5] we conclude it is not. On the whole, the processing of Appellant's case has not been subjected to extensive post-trial delay, and we perceive no substantial harm to Appellant, prejudice to the interests of justice or discipline, or erosion of this court's ability to conduct our review or grant appropriate relief that would move us to modify an otherwise fitting sentence.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

---

[5] These factors include: (1) how long the delay exceeded the standards set forth in *Moreno*; (2) what reasons, if any, the Government set forth for the delay, and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) whether there is evidence of harm (either to the appellant or institutionally) caused by the delay; (4) whether the delay has lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation; and (6) given the passage of time, whether this court can provide meaningful relief in this particular situation. *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).