# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32556**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Christopher D. MACALUSO**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 27 May 2020

———————————

*Military Judge:* Thomas J. Alford.

*Approved sentence:* Bad-conduct discharge, confinement for 8 months, forfeiture of $1,000.00 pay per month for 8 months, reduction to E-1, and a reprimand. Sentence adjudged 11 September 2018 by SpCM convened at Buckley Air Force Base, Colorado.

*For Appellant:* Captain M. Dedra Campbell, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Zachary T. West, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges*.

Judge POSCH delivered the opinion of the court, in which Chief Judge J. JOHNSON and Judge KEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

POSCH, Judge:

In accordance with Appellant's pleas of guilty, a special court-martial composed of a military judge found Appellant guilty of making a false official statement and operating a vehicle while drunk, in violation of Articles 107 and 111,

Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 911, and fleeing the scene of an accident and obstruction of justice, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1,2] Appellant was sentenced to a bad-conduct discharge, confinement for eight months, forfeiture of $1,000.00 pay per month for eight months, reduction to the grade of E-1, and a reprimand. The convening authority approved the adjudged sentence.

Appellant contends the conditions of his post-trial confinement warrant sentencing relief under this court's Article 66(c), UCMJ, 10 U.S.C. § 866(c), authority to approve only so much of a sentence that, based on the entire record, should be approved.[3] In addition, we consider the issue of errors in the preparation of the court-martial order. Finding no prejudicial error and no relief warranted, we affirm the findings and sentence.

## I. BACKGROUND

Appellant's convictions are founded on his conduct after he became drunk on mixed drinks containing whiskey at a squadron holiday party in December 2017. Appellant left the party, went to his truck where he drank more whiskey, and then drove through the city of Aurora, Colorado. Appellant drove his truck through a red light, rear-ending a car at 60 miles per hour, injuring the driver. Appellant's truck came to a stop after side-swiping a sport utility vehicle with a driver and five passengers, causing property damage to all vehicles.

Appellant fled the scene on foot without checking to see if anyone was injured, as occupants of one of the damaged vehicles gave chase. Appellant managed to avoid his pursuers, and the next day, called his first sergeant and reported his truck had been stolen, lying to conceal his role in the accident. A few days later, Appellant called a detective who was investigating the accident to ask about the status of his truck. Over the course of several phone calls, Appellant pretended not to know where his truck was when questioned by law enforcement, and withheld information about his involvement in the accident.

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Appellant pleaded not guilty to a specification of reckless operation of a vehicle that was charged in the alternative, in violation of Article 111, UCMJ, 10 U.S.C. § 911, which the convening authority withdrew and dismissed after arraignment.

[3] Although not raised as an assigned error or pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant's counsel notes the staff judge advocate's recommendation fails to advise the convening authority what action he could take for the finding of guilty for the offense of fleeing the scene of an accident. However, Appellant alleges no prejudice and we determine this issue does not require further discussion or warrant relief. *See generally United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

Appellant also denied driving his truck on the night of the squadron party, hoping to avoid being investigated for his role in the accident.

At the close of Appellant's court-martial on 11 September 2018, he entered confinement at the Douglas County Justice Center (hereafter referred to as "the DCJC") in Castle Rock, Colorado. Appellant remained at the DCJC until 20 November 2018, when he was transferred to a military confinement facility where he served the remainder of his confinement. After first complaining to his chain of command, on 22 October 2018 Appellant filed a grievance with the DCJC raising issues about the conditions of his post-trial confinement, which he renewed in his clemency submission to the convening authority on 9 November 2018.

In his clemency statement to the convening authority, Appellant maintained he was "essentially being held in solitary confinement" and spent only a couple of hours outside his jail cell each day. Appellant also claimed he was not afforded access to religious, educational, and work programs; he was not provided with his prescribed medications and was given a new medication that could have caused heart problems; he was forced to wear the same underwear for two and a half weeks and developed a rash; he found hair in his food numerous times; he had to purchase toiletries even though those items were supposed to be provided at no cost pursuant to a memorandum of agreement (MOA) between the DCJC and Buckley Air Force Base (AFB); and he suffered bleeding gums because he was not given dental floss.

In response to Appellant's claims, appellate government counsel provided this court with a declaration from the noncommissioned officer in charge of confinement at Buckley AFB. Appellate government counsel also provided a declaration from the Classification Sergeant with the Douglas County Sheriff's Office (DCSO), which provided details about Appellant's confinement conditions at the DCJC. The DCSO's declaration includes attachments which variously refute Appellant's claims or place them in context.

The Government's response explains Appellant was not placed into solitary confinement. Rather, he was placed into administrative separation in the same housing unit where political figures and law enforcement officials would reside if confined, and this period lasted 70 days. Appellant was housed separately from the general population to ensure his safety and the security of inmates, and consequently, Appellant was unable to attend work programs. However, Appellant had access to a television, newspapers, a telephone, and the library. DCJC records show Appellant used these resources, including making specific requests for particular book genres, Sudoku puzzles, and an opportunity to learn breathing exercises. Further, the records show Appellant routinely received time out of his cell and completed 109 phone calls. The DCJC offered Appellant an opportunity to meet with a chaplain, but Appellant declined.

The DCSO's response explains that upon intake, Appellant denied being on any medication. Appellant did not receive medication from his personal property because it did not meet the DCJC's drug formulary. Once Appellant complained he was not receiving his prescription medication, the DCSO investigated and determined that Appellant's prescription did not meet the drug formulary and placed Appellant on what the medical staff believed to be appropriate medication. Appellant had access to medical care, making at least six visits to the medical ward, and he received prompt replies when he complained of medical or mental health issues. With regards to Appellant's rash, the DCSO's response states that Appellant complained about a fungus on his inner thighs, and correctional staff promptly responded to Appellant's message, forwarding the complaint to medical staff and authorizing Appellant to use additional clean towels throughout the week. Further, there was a washer and dryer in Appellant's pod he could use to launder clothes.

The DCSO's response also explains the DCJC staff took appropriate steps to prepare the prison food, including wearing gloves and hairnets, and the local health department conducts inspections to ensure food standards are met. Appellant was provided with hygiene items when he first arrived at the jail. Further, Appellant's commissary receipts show he purchased at least three tubes of tartar control toothpaste, demonstrating he had access to basic toiletries and in fact received them. Despite his claims about bleeding gums, Appellant did not complain about bleeding gums via the electronic grievance system and purchased snacks and other items from the DCJC commissary throughout his confinement. DCSO's response explains that if Appellant had complained about an oral hygiene concern, the medical staff would have responded appropriately, as they did for other medical issues.

Lastly, the DCSO's response explains that the DCJC followed the terms of the MOA when it required Appellant to purchase toiletries from its commissary. Per the MOA, the correctional facility provided Appellant with hygiene items upon Appellant's arrival. However, beyond the initial issuance of hygiene items, the MOA states that a military inmate will receive toiletries provided to any other inmate normally confined within the facility. Appellant had the opportunity to purchase additional hygiene items from the commissary, and considering he had money in his commissary account, Appellant was required to pay for additional hygiene items.

## II. DISCUSSION

### A. Conditions of Post-trial Confinement

Appellant urges this court to exercise its authority under Article 66(c), UCMJ, to provide sentence relief for the conditions of his post-trial confinement. Under Article 66(c), UCMJ, we have broad authority and the mandate

to approve only so much of the sentence as we find appropriate in law and fact on the basis of the entire record, and we could grant sentence relief even without finding a violation of the Eighth Amendment,[4] or Article 55, UCMJ, 10 U.S.C. § 855. *See United States v. Gay*, 74 M.J. 736, 742–43 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016); *see also United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002).

To the extent there are contradictions between Appellant's clemency submission and the declarations the Government submitted in response to Appellant's claims, we considered whether a post-trial evidentiary hearing was required to resolve a factual dispute. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967) (per curiam). We are convinced such a hearing is unnecessary. Even if we resolve contradictions in the record in Appellant's favor, the alleged conditions would not result in relief. *See Ginn* at 248.

After considering the facts and circumstances in the present case, we decline to provide relief under Article 66(c), UCMJ. As this court observed in *United States v. Ferrando*:

> While we have granted sentence relief based upon conditions of post-trial confinement where a legal deficiency existed, we are not a clearing house for post-trial confinement complaints or grievances. Only in very rare circumstances do we anticipate granting sentence relief when there is no violation of the Eighth Amendment or Article 55, UCMJ.

77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted); *cf. United States v. Nerad*, 69 M.J. 138, 145–47 (C.A.A.F. 2010) (holding that despite our significant discretion in reviewing the appropriateness of a sentence, this court may not engage in acts of clemency).

This case does not present those very rare circumstances. Despite Appellant's characterization, the circumstances of his confinement do not appear to involve the extreme segregation associated with solitary confinement. There is no indication in the record that Appellant was subjected to physical or mental abuse, singled out because of his military status for oppressive treatment, denied necessary medical attention, or refused any necessity that only the DCJC staff could provide. Contrary to Appellant's claims, this is not a case where the conditions of confinement were more severe than necessary. Following our Article 66(c), UCMJ, mandate to approve only so much of a sentence that, based

---

[4] U.S. CONST. amend. VIII.

on the entire record, should be approved, we decline to grant the requested sentencing relief.

## B. Error in the Court-Martial Order

Before trial, on 6 September 2018, the convening authority withdrew and dismissed a second specification under Charge III, leaving a single specification, enumerated as Specification "1," which alleges Appellant wrongfully left the scene of an accident without making his identity known, in violation of Article 134, UCMJ.

Trial counsel did not change or renumber the remaining specification by striking "1" to reflect that it remained the sole specification of the charge. This was error. Air Force Instruction (AFI) 51–201, *Administration of Military Justice*, ¶ 7.3.2.1 (8 Dec. 2017) ("When charges or specifications are withdrawn before arraignment, trial counsel ensures the remaining charges or specifications are renumbered and the new numbers reflected on the charge sheet and throughout the record of trial."); *see also* Rule for Courts-Martial 604(a), Discussion ("When directed to do so by the convening authority or a superior competent authority, trial counsel may withdraw charges or specifications by lining out the affected charges or specifications, renumbering remaining charges or specifications as necessary, and initialing the changes.").

Subsequently, Appellant pleaded to, and was found guilty of, Specification "1" of Charge III as it was originally referred to trial. However, after trial, both the court-martial order (CMO) and report of result of trial show a plea and finding of guilty to the "specification" of Charge III without enumeration, as though the amendment that trial counsel was required to make before arraignment had been made, when it had not. This too was error as the CMO is inconsistent with Appellant's plea and the finding of guilty.[5]

We are mindful of the confusion that can arise in post-trial processing when a specification that should have been renumbered before arraignment remains unchanged, but the regulation is relatively straightforward: "Charges and specifications withdrawn before arraignment do not appear in the court-martial order *if the other charges were correctly renumbered*." AFI 51-201,

---

[5] The second error was confined to the preparation of the post-trial documents including the report of result of trial. The charge sheet was unchanged.

¶ 9.8.2.2.5 (emphasis added).[6] Here, the specification was not correctly renumbered and the CMO is inconsistent with Appellant's plea and the finding of guilty.

We direct publication of a corrected CMO to remedy this error. We considered simply directing the Government to publish a CMO enumerating the "specification" of Charge III as "Specification 1" in the same way it was discussed on the record. However, such an amendment has the potential to fix one error at the same time sowing doubt that there were no other referred specifications of Charge III that were resolved at Appellant's court-martial either by action of the convening authority after arraignment or in the findings at trial. We resolve this concern and trial counsel's error by directing the corrected CMO will include Specification "1" and "2" of Charge III as they were referred by the convening authority and as arraigned. The CMO will reflect that Specification 2 of Charge III had been withdrawn and dismissed before arraignment. This change will ensure that Appellant's plea, as entered, to the erroneously enumerated Specification "1" of Charge III, and the resultant finding of guilty, as announced, to Specification "1" are accurately reflected in the record. We direct other changes to the CMO in the footnote to our decree.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

---

[6] Trial counsel's duties in the 2017 Air Force Instruction (AFI) are currently described in AFI 51-201, *Administration of Military Justice*, ¶¶ 12.3.2.1 and A12.8.2.2.5 (18 Jan. 2019, as amended by AFGM 2019-02, 30 Oct. 2019), although the responsibilities are the same.

Accordingly, the findings and the sentence are **AFFIRMED**.[7]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[7] Besides the court-martial order (CMO) error we address in our opinion, Appellant's counsel identifies additional errors. First, the CMO erroneously omits "from" in language the military judge excepted from the Specification of Charge I when he announced findings. Second, the CMO erroneously states Appellant's plea to Specification 1 of Charge II as "[w]ithdrawn and dismissed after arraignment" instead of "NG"—Appellant entered a plea of not guilty to Specification 1 of Charge II before it was withdrawn and dismissed by the convening authority. Third, the CMO erroneously states Appellant pleaded guilty to and was found guilty of "Charge I" under the Additional Charge. In fact, Appellant pleaded guilty to and was found guilty of the Additional Charge—neither the plea nor finding to the Additional Charge is reflected in the CMO, the language "Charge I" under the Additional Charge is inapt, and the purported pleas and findings to "Charge I" under the Additional Charge are erroneous. We note that the first and second errors are repeated in the report of result of trial. We direct publication of a corrected CMO to remedy these errors.