# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39342 (f rev)**

———————————

**UNITED STATES**
*Appellee*

v.

**Jerard SIMMONS**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon further review*

Decided 2 October 2020

———————————

*Military Judge:* Patricia A. Gruen.

*Approved sentence:* Dishonorable discharge, confinement for 12 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 14 July 2017 by GCM convened at Joint Base Langley-Eustis, Virginia.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Major Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, LEWIS, and KEY, *Appellate Military Judges*.

Chief Judge J. JOHNSON delivered the opinion of the court, in which Senior Judge LEWIS and Judge KEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

J. JOHNSON, Chief Judge:

Appellant's case is before this court for the second time. A general court-martial composed of officer members convicted Appellant, contrary to his pleas,

of four specifications of sexual assault of a child, one specification of extortion, and one specification of producing child pornography in violation of Articles 120b, 127, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 927, 934.[1] The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for 12 years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

Upon our initial review, we found Appellant was not entitled to relief with regard to the seven issues he raised; however, we found that a new post-trial process and action were required due to errors in the staff judge advocate's recommendation (SJAR) to the convening authority. *United States v. Simmons*, No. ACM 39342, 2019 CCA LEXIS 156 (A.F. Ct. Crim. App. 9 Apr. 2019) (unpub. op.). Accordingly, we set aside the convening authority's action and returned the record of trial to The Judge Advocate General for remand to the convening authority. *Id*. at *57. On remand, after receiving additional clemency submissions from Appellant, the convening authority again approved the adjudged sentence.

Appellant now raises a single issue: whether relief is warranted due to delays in the post-trial processing of his case. We find modest sentence relief is warranted, and take appropriate action in our decretal paragraph.

## I. BACKGROUND

This court issued its prior opinion in Appellant's case on 9 April 2019. On 7 June 2019, the record was returned to the convening authority after the Government declined to seek review of this court's prior opinion at the United States Court of Appeals for the Armed Forces (CAAF) within 60 days. *See* C.A.A.F. R. 22(b)(3). A new SJAR was signed 13 June 2019 and served on Appellant's newly assigned area defense counsel on 24 June 2019. On 1 July 2019, Appellant's counsel requested and was granted an extension to file Appellant's clemency materials. On 26 July 2019, Appellant submitted his clemency petition. The staff judge advocate signed the addendum to the SJAR on 1 August 2019, and the convening authority took action on the same day.

---

[1] All references in this opinion to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2012 ed.). All other references to the UCMJ are to the *Manual for Courts-Martial*, *United States* (2016 ed.).

According to a sworn declaration from JS,[2] the Chief of Appellate Records for the Air Force Legal Operations Agency's Military Justice Division (AFLOA/JAJM), the new post-trial documents arrived by mail at Joint Base Andrews on 19 August 2019, and were "received by AFLOA/JAJM sometime later that week." However, JS was personally unaware of their arrival until she contacted the convening authority's legal office on 3 October 2019 to inquire about the status of the case. Upon reviewing the material, JS noticed that certain documents were missing, and she notified the legal office on 7 October 2019. JS received the missing documents on 8 October 2019 and returned the original record of trial to this court on the same day.

## II. DISCUSSION

### A. Law

"We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citing *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004); *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003)). "[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *Id.* at 135 (citing *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004); *Diaz v. JAG of the Navy*, 59 M.J. 34, 37–38 (C.A.A.F. 2006)). In *Moreno*, the CAAF established a presumption of facially unreasonable delay when the convening authority does not take action within 120 days of sentencing, when the record of trial is not docketed with the Court of Criminal Appeals within 30 days of action, or when the Court of Criminal Appeals does not render a decision within 18 months of docketing. *Id.* at 142. Where there is such a delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review

---

[2] In *United States v. Jessie*, the United States Court of Appeals for the Armed Forces (CAAF) explained the general rule "that the [Courts of Criminal Appeals] may not consider anything outside of the 'entire record' when reviewing a sentence under Article 66(c), UCMJ." 79 M.J. 437, 441 (C.A.A.F. 2020) (quoting *United States v. Fagnan*, 30 C.M.R. 192 (C.M.A. 1961)) (additional citation omitted). The post-trial delay at issue is evident in the "entire record," and therefore properly before us for review. *See Jessie*, 79 M.J. at 440. However, the CAAF also recognized that "some [of its] precedents have allowed the [Courts of Criminal Appeals] to supplement the record when deciding issues that are raised by materials in the record," specifically with affidavits or hearings ordered pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam). *Jessie*, 79 M.J. at 442. In *Jessie*, the CAAF declined to disturb this line of precedent. *Id.* at 444. Accordingly, we understand *Jessie* to permit our review of JS's declaration regarding the post-trial delay.

and appeal; and (4) prejudice [to the appellant].” *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey*, 60 M.J. at 102). “No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding.” *Id.* at 136 (citing *Barker*, 407 U.S. at 533). The CAAF identified three types of cognizable prejudice for purposes of an appellant’s due process right to timely post-trial review: (1) oppressive incarceration; (2) “particularized” anxiety and concern “that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;” and (3) impairment of the appellant’s ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted).

In *United States v. Tardif*, the CAAF recognized that “a Court of Criminal Appeals has authority under Article 66(c), [UCMJ, 10 U.S.C. § 866(c)] to grant relief for excessive post-trial delay without a showing of ‘actual prejudice’ within the meaning of Article 59(a), [UCMJ, 10 U.S.C. § 859(a)] if it deems relief appropriate under the circumstances.” 57 M.J. 219, 224 (C.A.A.F. 2002) (citation omitted). “[I]n addition to its determination that no legal error occurred within the meaning of Article 59(a), the [Court of Criminal Appeals] was required to determine what findings and sentence ‘should be approved,’ based on all of the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay.” *Id.* In *United States v. Gay*, this court identified six factors to consider in determining whether *Tardif* relief is appropriate for post-trial delay that is facially unreasonable yet does not amount to a due process violation under *Moreno* and *Barker*:

> 1. How long did the delay exceed the standards set forth in [*Moreno*]?
>
> 2. What reasons, if any, has the government set forth for the delay? Is there any evidence of bad faith or gross indifference to the overall post-trial processing of this case?
>
> 3. Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, is there nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay?
>
> 4. Has the delay lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline?
>
> 5. Is there any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation?
>
> 6. Given the passage of time, can this court provide meaningful relief in this particular situation?

74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). "We consider no single factor dispositive, and a given case may reveal other appropriate considerations for this court in deciding whether post-trial delay has rendered an appellant's sentence inappropriate." *Id.* (footnote omitted).

## B. Analysis

Focusing on the 68 days that elapsed between the convening authority's new action on 1 August 2019 and the return of the record of trial to this court on 8 October 2019, Appellant contends this court should set aside his dishonorable discharge due to unreasonable post-trial delay, either for a violation of his due process rights under *Moreno* or as a matter of sentence appropriateness under *Tardif*. The Government opposes any relief. Under the particular circumstances of this case, we find sentence relief under *Tardif* is appropriate.

### 1. *Moreno*

First, we consider whether Appellant's due process rights were violated in light of *Moreno*. The 68 days that elapsed between action and docketing exceeded the 30-day *Moreno* standard for a facially unreasonable delay. Accordingly, we have considered the four *Barker* factors in light of all of the circumstances of the case.

#### a. Length of Delay

We recognize that, for purposes of due process analysis, the length of the delay "is to some extent a triggering mechanism" that initiates the *Barker* analysis. *United States v. Cossio*, 64 M.J. 254, 257 (C.A.A.F. 2007) (internal quotation marks omitted) (quoting *United States v. Smith*, 94 F.3d 204, 208–09 (6th Cir. 1996)). However, the length of the delay is also a factor in the analysis in its own right, and logically a longer facially unreasonable delay would tend to weigh more heavily than a shorter facially unreasonable delay. In this case, the delay exceeded the 30-day *Moreno* standard by 38 days, a substantial violation. Accordingly, we find the length of delay weighs substantially in Appellant's favor.

#### b. Reasons for Delay

According to JS's declaration, the new action and related documents arrived in the mail at Joint Base Andrews on Monday, 19 August 2019, and were delivered to AFLOA/JAJM sometime later that week. The only reason given for the delay in docketing the record from that point until JS contacted the convening authority's legal office on 3 October 2019 is that JS was "unaware that the documents had arrived." Although we appreciate the declarant's candor, no further explanation is given for this breakdown in communication, and the Government does not attempt to justify the delay. Accordingly, although

there is no indication of intentional delay, the reasons for the delay weigh solidly in Appellant's favor.

### c. Demand for Speedy Post-Trial Review

Appellant acknowledges his first assertion of his right to timely review came in his assignment of error on the instant appeal. However, we note that the unreasonable delay occurred late in the process, and that Appellant filed his assignment of error (and demand for speedy review) on 3 December 2019, within two months of the record being redocketed with this court. Accordingly, we weigh this factor in the Government's favor, but only moderately.

### d. Prejudice

The Government contends Appellant has failed to demonstrate any of the forms of cognizable prejudice the CAAF identified in *Moreno*. *See* 63 M.J. at 138–40 (citations omitted). We agree. Notably, Appellant's brief fails to identify how the delay has resulted in either oppressive incarceration, particularized anxiety and concern, or impairment to his ability to defend himself at a rehearing. Nor can we discern such prejudice. Where, as in this case, the appellant has not prevailed on the substantive grounds of his appeal, there is no oppressive incarceration. *Id.* at 139. Similarly, where Appellant's substantive appeal fails, his ability to present a defense at a rehearing is not impaired. *See id.* at 140. Moreover, Appellant has not indicated particularized anxiety or concern qualitatively different from that experienced by other appellants awaiting appellate review. *See id.*

### e. Conclusion with Respect to Due Process

Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Considering the *Barker* factors together and the totality of the circumstances, the 68 days that elapsed between action and docketing, although significant and unreasonable, was not so egregious as to undermine public confidence in the military justice system. Accordingly, we do not find a violation of Appellant's due process right to timely post-trial and appellate review.

### 2. *Tardif* and *Gay*

Next we undertake the separate analysis of whether sentence relief is warranted in light of *Tardif*. This involves consideration of the six factors identified in *Gay* which are distinct from, although related to, the *Barker* factors and *Moreno*—keeping in mind that no single factor is dispositive, and other considerations may be appropriate in a particular case. *Gay*, 74 M.J. at 744.

### a. *Length of Delay in Excess of* Moreno *Standard*

As described above, the delay between action and docketing exceeded the 30-day *Moreno* standard by 38 days. This is a significant violation of the standard and weighs in favor of granting relief.

### b. *Reasons for Delay*

As described above, the Government does not attempt to justify the delay, which it attributes to "neglect." We acknowledge there is no evidence of bad faith, and that eventually JS inquired about the status of the case—although not until more than two months after the convening authority took action, and after the post-trial paperwork had apparently been overlooked for more than a month. We are also mindful of our superior court's admonition that "delay in the administrative handling and forwarding of the record of trial and related documents to an appellate court [ ] is the least defensible of all [post-trial delays] and worthy of the least patience." *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990). Accordingly, we find the reasons for the delay also weigh in favor of relief.

### c. *"Some Evidence of Harm"*

In *Gay*, this court explained that evidence of either harm to the appellant or "institutional[ ]" harm could weigh in favor of relief. 74 M.J. at 744. This factor is not simply a reanalysis of the three very particular forms of prejudice the CAAF articulated in *Moreno*. Indeed, the premise of *Tardif* relief is that sentence relief under Article 66(c), UCMJ, may be appropriate even in the absence of any material prejudice to an appellant's substantial rights. 57 M.J. at 224; *cf. Gay*, 74 M.J. at 744 ("We consider no single factor dispositive . . . ."). Therefore, applying a more expansive view of harm resulting from the 38-day delay, we do perceive some amount of harm to Appellant in this case.

Appellant vigorously litigated the charges against him at trial, and he vigorously litigated his convictions on appeal at this court. Although we found Appellant was not entitled to relief on the seven issues he raised on his initial appeal, he has the right to seek further review at the CAAF. *See* 10 U.S.C. § 867(a), (b). However, that right was delayed due to substantial errors in the original SJAR which required a new post-trial process and convening authority action. The additional unreasonable post-trial delay in this case has further delayed Appellant's opportunity to seek review at our superior court. Although relief at the CAAF is far from assured, every day that passes while Appellant waits under his sentence to confinement incrementally decreases the practical value of his right to appeal. We recognize that the post-trial and appellate process inevitably takes time, and that it is very possible Appellant will ultimately receive no relief from further appeals. However, under the particular circumstances of this case, where admitted government neglect compounded delays

caused by earlier government errors in the post-trial process, we discern "some evidence of harm" to Appellant's rights and interests. *Gay*, 74 M.J. at 744. Accordingly, we weigh this factor slightly in Appellant's favor.

### d. Lessened Disciplinary Effect/Consistency with Justice and Good Order and Discipline

The fourth *Gay* factor merges two considerations: whether "the delay [has] lessened the disciplinary effect of any particular aspect of the sentence, and [whether] relief is consistent with the dual goals of justice and good order and discipline." *Id.* On one hand, we do not perceive how the delay has lessened the disciplinary effect of Appellant's sentence. On 14 July 2017, Appellant was sentenced to be confined for 12 years. We presume Appellant's disciplinary circumstances have not changed as a result of the delay between action and docketing, as we have no evidence to the contrary. On the other hand, we find that under the circumstances of this case, granting modest sentence relief is consistent with both justice and the maintenance of good order and discipline. Accordingly, we find this factor does not favor granting relief or denying relief.

### e. Evidence of Institutional Neglect

Although the Government attributes the unreasonable delay in this case to "neglect," we do not find evidence of "institutional neglect." Appellant has not drawn our attention to similar lapses at AFLOA/JAJM, nor are we familiar with such incidents from other cases. The incident in Appellant's case is concerning, but we note that eventually JS was prompted to inquire about the status of the case, so there is some evidence of institutional oversight of the process. Accordingly, we find this factor weighs against granting relief.

### f. Meaningful Relief

The last *Gay* factor considers whether this court can provide meaningful relief in this situation, given the passage of time. In light of Appellant's lengthy term of confinement, we find that we can—a modest credit against Appellant's term of confinement can provide a concrete benefit to Appellant that is proportional to the error in this case. Accordingly, we weigh this factor in favor of granting relief.

### g. Conclusion with Respect to Tardif Relief

Balancing the *Gay* factors together, in light of the totality of the circumstances in this case, we find modest sentence relief in accordance with *Tardif* is warranted.

### 3. Relief

The remaining question is what form that relief should take. We find Appellant's suggestion that we disapprove his dishonorable discharge entirely

disproportionate to the circumstances. On the other hand, mitigating the reduction in grade would be largely symbolic in Appellant's case and may provide Appellant little in the way of meaningful relief, while also doing little to inspire greater vigilance on the Government's part. Modifying Appellant's forfeitures also seems ill-suited to the circumstances.

Accordingly, we find a small reduction in Appellant's term of confinement to be appropriate. We considered a day-for-day reduction in Appellant's sentence for every day the Government exceeded the 30-day *Moreno* standard; that is, a 38-day reduction in Appellant's term of confinement. However, we conclude that is more relief than is warranted under the circumstances. We are mindful that the post-trial delay in this case has not lessened the severity of the offenses for which Appellant was convicted. Moreover, in our prior opinion we determined Appellant is not otherwise entitled to relief from his convictions or sentence, and his prospects for securing relief at the CAAF are uncertain and speculative. We conclude that a ten-day credit against Appellant's term of confinement is appropriate under the circumstances, and we take appropriate action in our decretal paragraph.

### III. CONCLUSION

We affirm only so much of the sentence as provides for: a dishonorable discharge; confinement for 11 years, 11 months, and 20 days; forfeiture of all pay and allowances; and reduction to the grade of E-1. The approved findings and sentence, as modified, are correct in law and fact, and no further error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence, as modified, are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court