# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39731**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Marqavius GREENE**
Airman (E-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 4 February 2021

————————————

*Military Judge:* Willie J. Babor.

*Approved Sentence:* Dishonorable discharge, confinement for 3 years and 6 months, and reduction to E-1. Sentence adjudged 24 February 2019 by GCM convened at Royal Air Force Lakenheath, United Kingdom.

*For Appellant:* Mark C. Bruegger, Esquire.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire; Jordan E. Michel (civilian intern).[1]

Before LEWIS, D. JOHNSON, and CADOTTE, *Appellate Military Judges.*

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

---

[1] Mr. Michel was supervised by attorneys admitted to practice before this court.

PER CURIAM:

A general court-martial composed of a military judge sitting alone found Appellant guilty, pursuant to his pleas, of one specification of failure to obey a lawful order, in violation Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892,[2,3] and two specifications of indecent recording, in violation of Article 120c, UCMJ, 10 U.S.C. § 920c.[4] The military judge sentenced Appellant to a dishonorable discharge, confinement for three years and six months, and reduction to the grade of E-1. On 20 June 2019, the convening authority approved the adjudged sentence.

Appellant's counsel submitted the case with one assignment of error: that Appellant's sentence is inappropriately severe. During our Article 66(c), UCMJ, 10 U.S.C. § 866(c) review, we identified and considered an additional issue not raised by Appellant: whether Appellant is entitled to sentencing relief as a result of facially unreasonable delay of appellate review. Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

On 23 September 2017, Appellant attended a house party in Ely, United Kingdom, with a group of friends. Also at the party was SH.[5] SH, along with a friend of hers, departed the party with Appellant and some of his friends. The group made some stops dropping people off, eventually arriving at Royal Air Force (RAF) Mildenhall where SH was stationed. Appellant and SH went back to her dormitory room where SH eventually fell asleep. During the providence inquiry, Appellant described that when SH "went to sleep she was partially naked, specifically she was not wearing shorts, pants, or underwear" and she

---

[2] Unless otherwise noted, all references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[3] Appellant's plea, and the military judge's findings, excepted the words and figures "divers occasions between" and "and 14 April 2018." Appellant was found not guilty of the excepted words and figures.

[4] The military judge acquitted Appellant of one specification of attempted sexual assault in violation of Article 80, UCMJ, 10 U.S.C. § 880 and two specifications of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920.

[5] SH is a female enlisted member of the United States Air Force.

was "undressed from the waist down."[6] Appellant stated that when SH slept her buttocks were exposed. Appellant explained that "[a]s she lay in that position [he] photographed and filmed her buttocks." Appellant made three video recordings and one photograph with his cellular phone of SH's buttocks without her consent.[7]

Appellant also indecently recorded and photographed a female civilian, Ms. ET. On 6 January 2018, Appellant was at a club in the town of Bury Saint Edmunds, Suffolk, United Kingdom. At the club Appellant and his friends met Ms. ET, who they did not know before that night. After midnight, Ms. ET, Appellant, and one of his friends departed the club for a nearby home. At the home, Appellant's friend and Ms. ET began having sexual intercourse. Unbeknownst to Ms. ET, Appellant surreptitiously filmed the sexual encounter, to include recording Ms. ET's private areas. While Ms. ET and Appellant's friend engaged in intercourse, Appellant filmed them from a vantage point at the end of the bed. Appellant was positioned out of the line of sight of Ms. ET and Appellant's friend. There was no indication that Ms. ET knew that Appellant was in the room at the time of the recording. Ms. ET did not consent to being recorded. Later, after Appellant's friend left the room and Ms. ET fell asleep, Appellant took additional photos of Ms. ET's exposed pelvic area, vagina, and buttocks. In total, Appellant made three video recordings and three photographs of Ms. ET's private areas with his cellular phone without her consent.

After committing the indecent recording offenses, Appellant was restricted to RAF Lakenheath, United Kingdom by written order of his commander dated 9 March 2018.[8] On 20 March 2018 the order was reissued with an expiration date of 30 April 2018 and served on Appellant. On 13 April 2018, Appellant drank alcohol on-base with friends and then violated the order by departing the base. Appellant traveled off-base to the City of Cambridge, United King-

---

[6] Appellant did not explain how SH arrived at her state of undress, nor did he describe any interaction between him and SH in her dormitory room prior to her falling asleep.

[7] Appellant's phone that contained the indecent recordings was searched by the Air Force Office of Special Investigations (AFOSI) pursuant to search authority from a military magistrate. AFOSI seized Appellant's phone as part of an investigation into allegations of sexual assault.

[8] The scope of the restriction limited Appellant to the confines of RAF Lakenheath and allowed Appellant to go anywhere on-base except for the private dormitory of other military members. Appellant continued to perform routine military duties. At the time of the restriction, Appellant was also under investigation for multiple allegations of sexual assault that were either not referred to trial or resulted in an acquittal.

dom with friends for several hours before returning to base. After it was discovered Appellant violated the order, he was placed into pretrial confinement on 27 April 2018.[9]

For the offenses of which he was found guilty, Appellant faced a maximum punishment of a dishonorable discharge, confinement for ten years and six months, reduction to the grade of E-1, forfeiture of all pay and allowances, and a reprimand.

During the sentencing phase of the court-martial, Appellant's squadron commander testified as a witness for the Government and opined that Appellant had "very low" rehabilitative potential. Additionally, the male enlisted Airman who engaged in sex with Ms. ET testified under a grant of immunity. He testified that Appellant was in the room when the Airman removed Ms. ET's clothing and when he had sex with her. However, there was no evidence that Ms. ET knew Appellant was in the room. The Airman further testified that he saw an unexpected flash while he was engaged in sex. The Government also introduced evidence consisting of a personal data sheet, enlisted performance reports, documentation relating to duty performance (to include records of Appellant's disciplinary history), and images and videos constituting indecent recordings for both victims.

In addition, SH, through her special victims' counsel, and Ms. ET both made unsworn statements under R.C.M. 1001A during the sentencing phase of the court-martial. SH explained in her unsworn statement that Appellant took pictures of her without her consent and she never thought that she "would become the girl in the video." She went on to say "to know that I was taken advantage of will never sit well with me."

In Ms. ET's unsworn statement she explained she was from the local area and first found out about the indecent recording from law enforcement. She was eventually shown the pictures and videos of her by law enforcement. She explained she "was confused and shocked, and [she] couldn't think how [it] could happen." She stated she "felt scared that other people might have seen [her] in these photos and videos."[10] Ms. ET explained that she "was in a good place in [her] life" before the offense. However, "what [Appellant] did to [her] sent [her] over the edge" and "caused [her] to spiral out of control." Later she said Appellant "has violated [her] sense of safety and security in [her] own hometown and in [her] country." Ms. ET acknowledged receiving a restitution

---

[9] Appellant raised a speedy trial motion at trial which was resolved adversely to Appellant by the military judge and was not raised as an assignment of error on appeal.

[10] At the court-martial there was no evidence Appellant broadcasted or disseminated the photos or videos of Ms. ET.

payment from Appellant, but said "it doesn't change how this has affected [her] this past year and how this will continue to affect [her] for the rest of [her] life."

During the sentencing phase, Appellant produced evidence of restitution payments of $1,000.00 made to both SH and Ms. ET. In addition to evidence of restitution, Appellant's presentencing evidence included a one-page collage of photographs, testimony from his mother, and an unsworn statement from Appellant.

Trial counsel's sentence recommendation included "22 months confinement and a bad conduct discharge."[11] Trial defense counsel argued an appropriate sentence was "time served and a punitive discharge."[12] After adjournment, Appellant waived his right to submit clemency matters to the convening authority.

## II. DISCUSSION

### A. Sentence Severity

#### 1. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2016) (footnote omitted). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

---

[11] In the alternative, trial counsel argued "[i]f this court believes our recommendation is reasonable, we request that you sentence [Appellant] to a greater time in confinement then [sic] our recommendation."

[12] "Time served" would have been the 303 days Appellant spent in pretrial confinement. Additionally, the type of punitive discharge was not specified in trial defense counsel's argument. After argument, trial defense counsel agreed with the military judge that he conceded "any" type of punitive discharge. The military judge engaged in a colloquy with Appellant, discussing both types of punitive discharge. Appellant agreed that he fully understood the ramifications of a dishonorable or bad-conduct discharge and that it was his expressed desire to be discharged with either.

### 2. Analysis

We have given full individualized consideration to Appellant as to the appropriateness of his sentence. Appellant's offenses were serious and his victims were a fellow Airman and a civilian from the local community. The impact of Appellant's offenses is shown by the unsworn statements presented by SH's counsel and Ms. ET. In particular, Ms. ET exhibited significant psychological impact caused by Appellant's actions. Further, Appellant's service record is marred by disciplinary issues which show a lack of rehabilitative potential. This includes three letters of reprimand and a record of nonjudicial punishment. Finally, Appellant violated his restriction while under criminal investigation.

Appellant's argument that the sentence was inappropriately severe focuses on the fact that the military judge's sentence was in excess of that recommended by trial counsel. However, a recommendation by Government counsel is not binding on the military judge. *United States v. Rosales*, No. ACM 39113, 2018 CCA LEXIS 52, at *4 (A.F. Ct. Crim. App. 30 Jan. 2018) (unpub. op.); *see also United States v. Frantz*, No. ACM 39657, 2020 CCA LEXIS 404, at *42 (A.F. Ct. Crim. App. 10 Nov. 2020) (unpub. op.). "The sentence recommendation made by Government counsel during sentencing argument is just that—a recommendation." *Rosales* at *3–4. We recognize the military judge imposed a substantial sentence, however we are also mindful the confinement portion of the sentence challenged by Appellant is only equal to one-third of the ten years and six months maximum imposable sentence. After careful consideration of the matters contained in the record of trial which were before the military judge, the nature and seriousness of Appellant's offenses, and his record of service, we find the sentence is not inappropriately severe as a matter of law.

### B. Appellate Delay

Appellant's case was docketed with this court on 29 March 2019. Appellant's counsel was granted 13 enlargements of time to file his brief, of which 9 included an explicit statement that Appellant understood his right to timely appellate review and consented to the enlargement. The Government opposed all the requested enlargements. Appellant filed his assignments of error on 28 September 2020. We rendered this decision 18 months and 19 days after docketing. Therefore, this delay is facially unreasonable. *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006).

Since there is facially unreasonable appellate delay, we conduct a *Barker v. Wingo*, 407 U.S. 514 (1972), analysis. Appellant did not demand speedy appellate review and has made no specific claim of prejudice with regard to timely appellate review, and we find none. *See Moreno*, 63 M.J. at 138–39 (citations omitted). We also find the delay in appellate review did not "adversely affect

the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). A substantial portion of the delay is the result of Appellant's requested enlargements of time. The record was substantial with 1,503 pages of transcript and, notwithstanding Appellant's 13 enlargements of time, the 18-month *Moreno* standard was only exceeded by 19 days. After balancing all the *Barker* factors, we find no due process violation for appellate delay.

Finally, applying *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we considered all the facts and circumstances with regard to the appellate delay and decline to exercise our Article 66(c), UCMJ, authority for excessive delay absent a due process violation. *See United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002); *Gay*, 74 M.J. at 744. After full consideration, we find Appellant is not entitled to relief for facially unreasonable appellate delay.

### III. CONCLUSION[13]

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

---

[13] Appellant's brief notes two deficiencies in the record of trial: (1) two inoperable discs from the preliminary hearing's exhibits; and (2) the military judge's written ruling on a speedy trial motion was not included as an appellate exhibit. Appellant's brief does not claim the record of trial is incomplete or raise either deficiency as an assignment of error. In addition, the court discovered two court exhibits are missing from the record. The court exhibits were marked as exhibits; however, neither was included in the record of trial. The missing court exhibits were victim impact statements of SH and Ms. ET admitted under R.C.M. 1001A. As both victim impact statements were read to the military judge, their contents were transcribed and available for our review. Finally, the disc admitted as Prosecution Exhibit 15 in the original record is inaccurate as it contains the same files as the disc admitted as Prosecution Exhibit 14. Fortunately, the military judge directed a copy of Prosecution Exhibit 15 to be attached to the record as Appellate Exhibit LXXXIV after ruling that one of the files was inadmissible. Therefore, we were able to review the evidence the military judge admitted using a portion of this appellate exhibit. Appellant does not raise any claims that he was prejudiced as a result of omissions or inaccuracies in the record of trial. We find the above omissions from the record insubstantial and that their absence does not render the record of trial incomplete. *See* Article 54(c), UCMJ, 10 U.S.C. § 854(c); *United States v. Davenport*, 73 M.J. 373, 376–77 (C.A.A.F. 2014); *United States v. Lovely*, 73 M.J. 658, 676 (A.F. Ct. Crim. App. 2014).

Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court